**H. K. PORTER COMPANY, INC.,**
Plaintiff-Appellee,

v.

**NICHOLSON FILE COMPANY**  et al.,
Defendants-Appellants.

**H. K. PORTER COMPANY, INC.,**
Plaintiff-Appellant,

v.

**NICHOLSON FILE COMPANY** et al.,
Defendants-Appellees.

Nos. 73–1023, 73–1024.

United States Court of Appeals,
First Circuit.

Heard and Argued April 10, 1973.

Decided July 30, 1973.

Edward L. Maggiacomo, and John F. Corrigan, Providence, R. I., with whom Adler, Pollock & Sheehan, Providence, R. I., was on briefs, for H. K. Porter Company, Inc.

Edward F. Hindle, Providence, R. I., with whom John H. Blish, and Edwards & Angell, Providence, R. I., were on briefs, for Nicholson File Co. and others.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On March 7, 1972, the H. K. Porter Company (Porter) mailed tender offers to the stockholders of Nicholson File Company (Nicholson), obligating itself to buy 437,000 shares of Nicholson common stock at $42 per share by April 4, 1972, or any extension of that date. Only 132,292 shares were tendered by the actual closing date, April 14, 1972, which shares Porter bought. Porter brought this action for damages in the district court against Nicholson and its directors and officers, alleging that to defeat Porter's request for tenders, they had issued false, fraudulent and misleading statements to Nicholson stockholders to induce them not to tender, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 thereunder, 17 C.F.R. § 240.-10b–5, and of § 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e).[1]

Defendants filed a motion to dismiss under F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The district court, pursuant to careful opinions, dismissed the § 10(b) and 10b–5 claim, 341 F.Supp. 508, but denied the motion with respect to the § 14(e) claim. 353 F.Supp. 153 (D.R.I. 1972; supplemental opinion, *Id.* 1973). Both sides have appealed, the defendants having been granted permission to do so by the district court. 28 U.S.C. § 1292 (b). We affirm.

The deceptive activities of which Porter complains may be summarized, from the complaint, as follows:

First, the defendants mailed a letter to the Nicholson stockholders telling

1. Section 10, 15 U.S.C. § 78j:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

17 C.F.R. § 240.10b–5:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or article to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 14(e), 15 U.S.C. § 78n(e):

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

them that Nicholson's directors had endorsed a merger with Walco National Corporation, which the directors considered a better alternative than selling shares to Porter. This proposed merger, it is alleged, was a sham. Second, the defendants brought a securities laws action against Porter and obtained a temporary restraining order against Porter's acceptance of tenders pending a hearing on a motion for a preliminary injunction. It is alleged that the directors mailed a misleading statement to the stockholders, informing them that Porter's offer had been "blocked" by an injunction and urging them not to turn in their shares and to retrieve shares already tendered, but omitting to tell them that the injunction was a temporary restraining order and did not constitute a finding that Porter had violated the law. The statement was allegedly further misleading in that it conveyed the false impression that stockholders had the right to take back their shares. Finally, the directors told the stockholders by mail of a merger proposal from VLN Corporation, preferable to both the Walco and Porter proposals. It is alleged that this statement was misleading in omitting relevant facts about the value of VLN stock.

## I. *The § 14(e) Claim*

Section 14(e), like other anti-fraud provisions of the securities laws, e. g., § 14(a), 15 U.S.C. § 78n(a), and § 10(b), does not by its terms confer a right of action on anyone for violation of its provisions. This silence, however, is no bar to implying a private cause of action. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S. Ct. 1555, 12 L.Ed.2d 423 (1964). It "is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *Id.* at 433, 84 S.Ct. at 1560. Nicholson, conceding that a nontendering stockholder would have a right of action against it for damages, *see* Neuman v.

Electronic Specialty Co., [1969–1970 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,591, at 98,705 (N.D.Ill.1969), and that Porter would have a right to sue for injunctive relief, *see* Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937 (2d Cir. 1969); Butler Aviation Int'l, Inc. v. Comprehensive Designers, Inc., 425 F.2d 842 (2d Cir. 1970), insists that Porter's is not the interest which § 14(e) was designed to protect and that therefore we should not imply for it a right of action for damages. But we think that such a right of action for damages, properly circumscribed, would effectuate the purposes of § 14(e).

Section 14(e) was part of the 1968 amendments, known as the Williams Act, to the Securities Exchange Act of 1934. The purpose of the Williams Act was to regulate the emerging "tender offer" takeover device in the interest of the investor—just as proxy solicitation had earlier been so regulated. *See* Note, Cash Tender Offers, 83 Harv.L.Rev. 377 (1969). "[The] bill is designed to make the relevant facts known so that the shareholders have a fair opportunity to make [this] decision." H.R.Rep.No. 1711, 90th Cong., 2d Sess., 1968 U.S. Code Cong. & Admin.News pp. 2811, 2813 (1968). Little in the legislative history suggests that Congress was motiviated by concern for the plight of frustrated tender offerors or, for that matter, the incumbent management of the target.[2] On the other hand, Senator Williams, sponsor of the amendments, expressed a desire "to avoid tipping the balance of regulatory burden in favor of management or in favor of the offeror." 113 Cong.Rec. 854 (1967). The Senator stated,

"The purpose of this bill is to require full and fair disclosure for the benefit of stockholders while at the same time providing the offeror and management equal opportunity to fairly present their case." *Id.* at 854–55.

---

**2.** Some proponents expressed sympathy for the target companies, but the "Congress insisted it was not playing favorites."

I. A. Bromberg, Securities Law: Fraud— SEC Rule 10b–5 § 6.3(122), at 116.3–116.4 (1971).

In furtherance of these aims, the statute requires the tender offeror to disclose to the stockholders he solicits information about his identity, plans, resources, etc. § 14(d)(1), 15 U.S.C. § 78n(d)(1), *see* § 13(d), 15 U.S.C. § 78m(d); in turn, the target's management is subject to SEC regulation of its efforts to influence stockholder acceptance or rejection and to repurchase its own securities defensively. § 14(d)(4), 15 U.S.C. § 78n(d)(4); § 13(e)(1), 15 U.S.C. § 78m(e)(1).

■ From the statutory scheme and the legislative history, it seems clear that the overriding purpose of § 14(e) is the protection of the investor. Yet affording for the offeror and the target's management a cause of action for damages would in many instances further that purpose. With an obvious economic stake in the outcome of the tender offer battle, they have the incentive to detect violations and vigorously pursue remedies. *See* Bromberg, Securities Law, *supra,* § 6.3(1040) at 124. Nicholson concedes Porter's right to sue in equity; but the threat of a damages action no less than an equitable suit may stimulate compliance, to the benefit of the investor. The Supreme Court said in *Borak* that "[p]rivate enforcement of the proxy rules provides a necessary supplement to [Securities & Exchange] Commission action . . . [T]he possibility of civil damages or injunctive relief serves as a most effective weapon in the enforcement of the proxy requirements." 377 U.S. at 432, 84 S.Ct. at 1560. This proposition is no less applicable to the tender offer situation. We see no reason why actions by the protagonists in the battle, as well as by the stockholders themselves, would not be effective enforcement weapons.

We find further support for this construction when we look to the context in which § 14(e) was enacted. Rule 10b–5 already covered exchanges of stock generally, including tender offers, but rights of action under it were commonly limited to purchasers and sellers. *See* Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). *See infra,* part II. Since § 14(e) substantially tracks the language of 10b–5 except for its omission of the purchase and sale requirement, it seems reasonable to conclude that its "major contribution [was] a broader standing to sue—accorded both to the offeror and to the opposition." Chris-Craft Industries, Inc. v. Bangor Punta Corp., 480 F.2d 341, at 361 (2d Cir., 1973). *See also* Electronic Specialty Co. v. International Controls Corp., *supra,* 409 F.2d at 940–941.

Finally, implying for the offeror and the target's management reciprocal rights of action for damages seems only fair given that each has a heavy economic stake, and that each is subject to what has been aptly described as "symmetrical" statutory obligations. Bromberg, Securities Law, *supra,* § 6.3(1040) at 124. Each is victimized when the other commits illegal acts to defeat or accomplish takeover bids. Tortious interference with a "prospective advantage" or inducement not to enter into a contract are wrongs long recognized at common law, giving rise to actions for damages. *See* W. Prosser, Law of Torts, c. 25 § 130 at 949 ff., esp. 956–60 (4th ed. 1971); Restatement of Torts § 766; Chris-Craft, *supra,* 480 F.2d at 360.

Thus, we infer a § 14(e) civil damages remedy for the tender offeror. *Accord,* Chris-Craft, *supra. See* Dyer v. Eastern Trust & Banking Co., 336 F. Supp. 890 (D.Me.1971). *See also* Note, The Developing Meaning of "Tender Offer" Under the Securities Exchange Act of 1934, 86 Harv.L.Rev. 1250, 1259–60 (1973).

■ It follows, however from the overriding investor-protection purpose of § 14(e) that damages should be denied to a tender offeror to the extent they are inconsistent with that purpose. The statute, in other words, may not be diverted from one designed to assist the investor to one operated principally to benefit one or another of the rival man-

agement or control groups jockeying for power.

The district court ruled that Porter (assuming liability is proven) could recover from the corporation itself. We do not disturb that ruling now. A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We cannot yet know the theory of damages to be established, nor how and to what extent recovery from Nicholson might affect the various Nicholson shareholders (of whom Porter has been one), nor what right of recovery may be available to the other Nicholson stockholders to offset the effect of any corporate loss. In the event Porter establishes a violation of § 14(e), the district court should make findings of the probable impact of recovery from Nicholson on its shareholders. Any recovery in damages from the corporation must be consistent with the primary congressional aim of protecting investors, and the district court would be warranted in denying damages, otherwise established, if it should conclude that to award them would be to subvert that purpose.

■ Recovery from the individual defendants is, of course, on a different footing. The individual defendants have not yet advanced any good reason why they should not be accountable in damages for illegal action, if any. Permitting them to be held civilly liable for illegal conduct has no greater "chilling" effect than permitting enforcement of the securities law in other respects. If their argument is that § 14(e) imposes unreasonably high standards, it is better directed to Congress. Appellant's other argument—that recovery will lead to indemnification of the individuals by the corporation and hence ultimately will burden its stockholders—assumes much more than we need to assume at this juncture. The posture of the case is presently like *Borak* when that case was

decided by the Supreme Court. We hold simply that the district court has power to grant appropriate relief to Porter should it prove its case. We leave to the district court's later determination what relief is necessary and appropriate in light of the objects of § 14(e).

## II. *The § 10(b) Claim*

■ The district court ruled that Porter's separate § 10(b) and Rule 10b–5 claim must be dismissed on the basis that Porter was not a purchaser or seller, a requirement for 10b–5 actions first established in Birnbaum v. Newport Steel Corp., *supra,* and applied to the tender offer situation in Iroquois Industries v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970). The Supreme Court has refrained from deciding whether a party, not a purchaser or seller, has a right of action under 10b–5. Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 13 n. 10, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), but the *Birnbaum* doctrine, with modifications, has generally been adopted by the circuits, at least with regard to actions for damages. *See,* e. g., Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970); Mount Clemens Industries, Inc. v. Bell, 464 F.2d 339 (9th Cir. 1972); City Nat'l Bank v. Vanderboom, 422 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); Knauff v. Utah Construction & Mining Co., 408 F.2d 958 (10th Cir.), cert. denied, 396 U.S. 831, 90 S.Ct. 83, 24 L.Ed.2d 81 (1969); Simmons v. Wolfson, 428 F.2d 455 (6th Cir. 1970), cert. denied, 400 U.S. 999, 91 S. Ct. 459, 27 L.Ed.2d 450 (1971).

We interpret the enactment of § 14(e) in 1968, dealing specifically with tender offers, as recognition of the inadequacy of other provisions of securities laws, especially § 10(b) and Rule 10b–5, to provide a comprehensive and sure remedy, at least for those who were not purchasers or sellers of securities. Possibly if Congress had not acted, tender offer activity would have stimulated courts to

a broader application of Rule 10b–5. We cannot know. But Congress has acted, and we think it both unnecessary and confusing to encourage, at this time, and especially in view of the Supreme Court's silence, the parallel development of alternative remedies. Here we are not faced with conduct occurring before the enactment of § 14(e) nor some other situation where the injured offeror lacks any possible remedy except under Rule 10b–5. *Cf.* SEC v. Nat'l Securities, Inc., 393 U.S. 453, 468–469, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Absent such special circumstances, we decline to embark upon a re-examination of the purchaser-seller requirement of 10b–5.[3] We hold that § 14(e) provides the exclusive civil remedy available to Porter, and that the district court did not err in dismissing its claim under § 10(b) and Rule 10b–5.

Affirmed.

---

3. Porter says that *Iroquois* conflicts with Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). Others have said that *Crane* merely represents an example of the "forced seller" modification of *Birnbaum*. *See Mount Clemens, supra,* 464 F.2d at 346; *cf.* Kahan v. Rosenstiel, 424 F.2d 161, 171–172 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). In any event, it appears from subsequent Second Circuit cases that the purchaser-seller requirement, however relaxed, still exists. *See* Drachman v. Harvey, 453 F.2d 722 (2d Cir. 1972).