Albert N. BERTOZZI et al.

v.

KING LOUIE INTERNATIONAL,
INC., et al.

Civ. A. No. 76–0158.

United States District Court,
D. Rhode Island.

Sept. 13, 1976.

Paul F. Greene, Edward J. Bertozzi, Jr., of Edwards & Angell, Providence, R. I., for plaintiffs.

Max Wistow, Providence, R. I., Marvin Rich, Kansas City, Mo., for defendants.

## OPINION

PETTINE, Chief Judge.

Plaintiffs have filed this class action on behalf of themselves and certain other stockholders of King Louie International, Inc., one of the defendants herein. The other individual defendants allegedly con-

stitute the management of King Louie and have, through their working control of the corporation, caused it to issue a tender offer to plaintiffs' designated class to purchase 139,246 shares of common stock with corporate funds. According to the amended complaint, the "defendants have caused copies of the Tender Offer herein to be sent to plaintiffs in this district". Plaintiffs further contend that the tender offer, and its distribution to plaintiffs in Rhode Island, is an integral part of a scheme perpetrated by and on behalf of the individual defendants, *inter alia*, to perpetuate their control of King Louie and cause it to "go private" to the detriment of public shareholders.

Relying on these facts, other asserted material omissions from the tender offer, and two recent decisions of the Second Circuit Court of Appeals, plaintiffs claim that the defendants have devised a plan which violates § 10(b), of the Securities Exchange Act of 1934 (the Act), 15 U.S.C. § 78j(b), Rule 10b–5 of the Securities and Exchange Commission (SEC), 17 C.F.R. § 240.10b–5, promulgated thereunder, and § 14(e) of the Act, 15 U.S.C. § 78n(e). *See Green v. Santa Fe Industries, Inc.*, 533 F.2d 1309 (2d Cir. 1976); *Marshel v. AFW Fabric Corp.*, 533 F.2d 1277 (2d Cir. 1976). In its ruling on plaintiffs' motion for a temporary restraining order, the Court examined the cited decisions and adopted their reasoning to find that the allegations of the verified complaint stated a violation of §§ 10(b) and 14(e) of the Act, as well as Rule 10b–5. A temporary restraining order was issued against King Louie to halt further action related to the tender offer. That order has been extended by consent of the parties. Since that ruling an amended complaint has been filed, as well as several motions, to which we now turn.

### I. Jurisdiction and Venue

#### A. Federal Securities Law Claims

In Counts I (§ 14(e) of the Act) and II (§ 10(b) of the Act and Rule 10b–5) of their amended complaint, plaintiffs assert violations of provisions of the Securities Exchange Act of 1934. Jurisdiction and venue are asserted under § 27 of the Act. 15 U.S.C. § 78aa, which provides:

"§ 78aa. Jurisdiction of offenses and suits

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter of the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts."

Plaintiffs claim that venue is properly premised in the District of Rhode Island upon two grounds recognized in § 27: 1) that this is "the district wherein any act or transaction constituting the violation occurred"; and 2) that this is "the district wherein the defendant . . . transacts business." If either ground for venue is met, it is clear that the defendants are properly before the Court, since § 27 permits service of process "in any other district of which the defendant is an inhabitant or wherever the defendant may be found".

In support of the first ground, plaintiffs point to the allegation that the defendants caused copies of the tender offer to be sent,

presumably by interstate mail, to plaintiffs, almost all of whom reside in Rhode Island. Both plaintiffs and defendants agree upon the standard to be applied to test the adequacy of this action to support venue and cite many of the same cases.

"In considering the extent and nature of the contact with a jurisdiction necessary to establish venue under section 27, this Court concluded in *Puma v. Marriott*, 294 F.Supp. 1116, 1120 (D.Del.1969) that section 27 'does not require that the violative act or acts form the core of the claim. All that is required is but one act within the forum district which represents more than an immaterial part of the allegedly illegal events.' In *Dauphin Corp. v. Redwall Corp.*, 201 F.Supp. 466, 469–470 (D.Del.1962) this Court ruled that acts committed in the jurisdiction which were 'integral parts of' or of 'material importance to' the commission of the violation of the '34 Act were sufficient to establish venue in this jurisdiction." *Jacobs v. Tenney*, 316 F.Supp. 151, 158 (D.Del. 1970).

Defendants acknowledge that as a general rule the use of interstate mail to distribute a proxy solicitation or, as here, a tender offer can constitute adequate ground for venue under § 27. Authority for this proposition was analyzed in *Sarratt v. Walker*, 405 F.Supp. 132, 134 (D.S.C.1975):

"The Fifth Circuit concluded in 1961 that 'any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient' for venue to lie in that district. *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204–05 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); cf. *Mariash v. Morrill*, 496 F.2d 1138 (2nd Cir. 1974). Other district courts considering this question have also reached the same conclusion and held that venue is proper in a district although the defendant committed only a single act there and was never in fact physically present. *See, e. g., Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974); *Prettner v. Aston*, 339 F.Supp. 273 (D.Del.1972); *Stern v. Gobeloff*, 332 F.Supp. 909 (D.C.Md.1971); *Livingston v. Weis*, 294 F.Supp. 676 (D.C.N.J.1968); *Schneider v. Sears*, 265 F.Supp. 257 (D.C. N.Y.1967)."

*See also Travis v. Anthes Imperial, Ltd.*, 473 F.2d 515 (8th Cir. 1973). *Cf. Goldberg v. Touche Ross & Co.*, 390 F.Supp. 290 (S.D. N.Y.1975).

Despite the broad language of the cited decisions and the wide accessibility that § 27 is designed to provide, cf. *Kane v. Central American Mining & Oil, Inc.*, 235 F.Supp. 559, 565 (S.D.N.Y.1964), defendants urge the Court to consider the distribution of the tender offer to plaintiffs in Rhode Island immaterial because only a small number of the shareholders live here. In support of this position, defendants cite dicta in *Puma v. Marriott*, 294 F.Supp. 1116, 1120 (D.Del.1969); and *Blanning v. Tisch*, 378 F.Supp. 1058, 1063 (E.D.Pa.1974).

With all due respect, the Court is not convinced that an act which "constitut[es] an important step in the execution of the fraudulent, deceitful scheme or in its consummation", *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204–205 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693, loses its materiality because its multistate consequences are diffuse and not concentrated in the forum state. Plaintiffs' federal claims are based upon an allegedly fraudulent and manipulative tender offer: without the mailing of that tender offer to the public shareholders of King Louie, the scheme could never be realized. Thus, the use of interstate mails to distribute the tender offer in Rhode Island must be considered an integral and material part of the allegedly fraudulent scheme. In addition, according to the July 8, 1976, affidavit of Paul F. Greene, plaintiffs owned 12.1%, not 2.5% as asserted by defendants, of the publicly held shares of King Louie stock at the time the tender offer was commenced. As a result, the Court concludes that defendants' reliance on dicta in *Puma, supra*, and *Blanning, su-*

*pra,* is factually as well as legally misplaced.

Defendants do not take issue with the applicability of the "co-conspirator" theory of venue to make all the defendants amenable to suit in the forum if venue is proper under § 27 as to any one of them. Plaintiffs have alleged that the individual defendants herein joined together with King Louie in the assertedly fraudulent tender offer. The Court has ruled that King Louie's distribution of the tender offer by interstate mail to plaintiffs in Rhode Island satisfies the venue provisions of § 27. It is further alleged that, as directors of King Louie, the individual defendants directly caused the tender offer to be mailed into the state. This need not be established, however, in order to hold the individual defendants amenable to suit in the forum under § 27, since the "co-conspirator" theory of venue is clearly applicable:

> "It is well recognized that in multi-defendant and multi-forum securities fraud actions any act committed material to and in furtherance of an alleged fraudulent scheme will satisfy the venue requirement of the Exchange Act [§ 27] as to all defendants wherever the defendants are found. . . . [A]s Judge Wyatt observed in *Clapp v. Stearns & Co.*, 229 F.Supp. 305, 307 (S.D.N.Y.1964) '[i]t is enough if "any act or transaction" by any defendant occurred here . . . This not only appears from the wording of the Act and from its policy to provide a forum for suits involving multi-state frauds, no matter of how many states the defendants are citizens . . . .' See also *Wyndham Associates v. Bintliff*, 398 F.2d 614, 620 (2d Cir. 1968), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Zorn v. Anderson*, [263 F.Supp. 745 (S.D.N.Y.1966)]; *Wharton v. Roth*, 263 F.Supp. 922 (E.D.N.Y.1964)." *SEC v.*

*National Student Marketing, Corp.*, 360 F.Supp. 284, 292 (D.D.C.1973).

*See also Arpet, Ltd. v. Homans*, 390 F.Supp. 908, 911–912 (W.D.Pa.1975). The Court therefore concludes that jurisdiction and venue are properly laid in this district as to each of the defendants under the first cited ground of § 27, and it need not reach the second cited ground pertaining to "transacting business" in the forum. .

### B. Pendent State Law Claims

In Counts III, IV, and V of the amended complaint, plaintiffs assert that the same underlying facts give rise to violations of state law based upon breach of contract (direct shareholder action) and breach of fiduciary duty (direct and derivative claims). Defendants do not dispute that these common or state law claims arise out of a "common nucleus of operative facts" so as to make the Court's exercise of pendent jurisdiction appropriate under the reasoning of *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Defendants, contend, however, that the Court does not have *in personam* jurisdiction to hear these claims. In essence, they argue that the extraterritorial service of process upon them which is authorized by § 27 of the Act, 15 U.S.C. § 78aa, subjects the defendants to the jurisdiction of this Court only as to claims based upon the federal securities law and does not extend their amenability to suit in the forum to nonfederal pendent claims. As a result, defendants argue, the only basis for *in personam* jurisdiction over them on the nonfederal claims would be Rhode Island's long-arm statute, R.I.G.L. § 9–5–33, which, they contend, does not apply. *But see* note 4, *infra.*

Defendants acknowledge that there is a split of authority as to the nonfederal reach of extraterritorial service of process pursuant to § 27 of the Act. Despite a number of early district court decisions denying such jurisdiction,[1] the clear trend of recent

1. *Levin v. Great Western Sugar Co.*, 274 F.Supp. 974, 979 (D.N.J.1967); *Parker v. Baltimore Paint & Chemical Corp.*, 244 F.Supp. 267 (D.Colo.1965); *Wilensky v. Standard Beryllium Corp.*, 228 F.Supp. 703 (D.Mass.1964); *International Ladies' Garment Workers' Union v.*

*Shields & Co.*, 209 F.Supp. 145 (S.D.N.Y.1962); *Phillips v. Murchison*, 194 F.Supp. 620 (S.D.N. Y.1961); *Lasch v. Antkies*, 161 F.Supp. 851 (E.D.Pa.1958); *Jaypen Holdings, Ltd. v. Bellanca Corp.*, 22 F.R.D. 190 (D.N.J.1958); *Schwartz v. Bowman*, 156 F.Supp. 361 (S.D.N.Y.1957),

authority has been to find that the personal jurisdiction acquired through § 27 extraterritorial service is not limited to federal securities law claims.[2]

Only the Third Circuit Court of Appeals has squarely considered the question. In *Robinson v. Penn Central Co.*, 484 F.2d 553 (1973), it concluded that a defendant brought before a court by § 27 extraterritorial service of process is there for all nonfederal claims over which the exercise of pendent jurisdiction is appropriate. Professors Moore and Wright agree. 2 Moore, Federal Practice, par. 4.42[1] at 1293.11–1293.12; 4 Wright & Miller, Federal Practice & Procedure: Civil § 1125 at 528–529. The First Circuit has not addressed this issue.[3]

The Court will not add to the length of this opinion by reiterating the analyses of the cited decisions. It suffices to say that

> *appeal dis'd sub nom. Schwartz v. Eaton*, 264 F.2d 195 (2d Cir. 1959). *See generally* 2 Moore, Federal Practice, par. 4.42[1] at 1293.12 n. 44.

**2.** *Robinson v. Penn Central Co.*, 484 F.2d 553 (3d Cir. 1973); *Schwartz v. Eaton*, 264 F.2d 195 (2d Cir. 1959) (dictum); *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D. Pa.1974); *Getter v. R. G. Dickinson & Co.*, 366 F.Supp. 559 (S.D.Iowa 1973); *Allen Organ Co. v. North American Rockwell Corp.*, 363 F.Supp. 1117 (E.D.Pa.1973); *Emerson v. Falcon Mfg. Co.*, 333 F.Supp. 888 (S.D.Tex.1971); *Puma v. Marriott, supra*; *Lyons v. Marrud, Inc.*, 46 F.R.D. 451 (S.D.N.Y.1968); *Sprayregen v. Livingston Oil Co.*, 295 F.Supp. 1376 (S.D.N.Y. 1968); *Kane v. Central American Mining & Oil, Inc.*, 235 F.Supp. 559 (S.D.N.Y.1964); *Cooper v. North Jersey Trust Co.*, 226 F.Supp. 972 (S.D.N.Y.1964); *Townsend Corp. v. Davidson*, 222 F.Supp. 1 (D.N.J.1963).

> *See also Travis v. Anthes Imperial Ltd.*, 473 F.2d 515 (8th Cir. 1973) (approving exercise of pendent jurisdiction over nonfederal claims where defendants served by § 27 extraterritorial service of process; precise issue not expressly resolved).
> *Compare United States Dental Institute v. American Association of Orthodontists*, 396 F.Supp. 565 (N.D.Ill.1975) (extraterritorial service under federal antitrust laws).

**3.** The First Circuit had occasion to address a somewhat similar issue in *Moreno v. United States*, 120 F.2d 128 (1st Cir. 1941), but that decision involved the reach of extraterritorial service of process to implead a nonresident third-party defendant to resolve all claims to

the Court is persuaded that the authorities cited in the preceding paragraph and note 2, *supra*, state the better view, one which serves both the purposes of the substantive federal statutory scheme and the practical considerations of judicial economy underlying the concept of pendent jurisdiction without imposing any additional burden upon defendants who are already properly before the Court to confront the same factual issues under the federal law claims.[4] Defendants' motion to dismiss the action is in all respects denied.

## II. Forum Non Conveniens

■ Defendants have also moved to transfer the action to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a), which provides:

"§ 1404. Change of Venue.

> the proceeds of a policy for war risk insurance. The broad, prophylactic provisions of the federal securities scheme were not involved. It is true that the Court stated that pursuant·to the extraterritorial service the district court "acquired jurisdiction over [the third-party defendant] for the limited purpose of adjudicating her claim to the proceeds of the insurance policy". *Id.* at 130. However, the facts of that case suggest that a narrow interpretation of that statement might be appropriate. The pendent claim—which plaintiff sought to raise against the impleaded party was for alienation of affections and not related to the underlying federal claim. Just the opposite is true herein. *See* 2 Moore, supra, par. 4.42[1] at 1293.12 n. 44.

**4.** Simple logic suggests that *in personam* jurisdiction over the state law claims is independently conferred by R.I.G.L. § 9–5–33, once it is concluded that § 27 of the Act applies to the federal claims. Since both § 27 and R.I.G.L. § 9–5–33 are identically designed to extend personal jurisdiction to the full extent permitted by the due process clause, *compare, e. g., Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1339 (2d Cir. 1972) (Friendly, C. J.) (§ 27), *with Scott Brass, Inc. v. Wire and Metal Specialties Corp.*, 344 F.Supp. 711, 713 (D.R.I.1972) (R.I.G.L. § 9–5–33), it does not seem logical to reach contrary conclusions on the same set of facts, as to defendants' personal jurisdiction under R.I.G.L. § 9–5–33 and § 27 of the Act. *Cf. Atlantic Tubing and Rubber Co. v. International Engraving Co.*, 364 F.Supp. 787 (D.R.I.1973).

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

There is no question that the Western District of Missouri is a district where this action might originally have been instituted, since King Louie's principal place of business and corporate offices are located there. The only issue here is the balancing of convenience to the parties. In making this inquiry, the Court is guided by the Supreme Court's admonition in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947):

"But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

The burden is placed upon the defendants to make this strong showing. *See Leesona Corp. v. Duplan Corp.*, 317 F.Supp. 290, 296 (D.R.I.1970).

In *Leesona, supra*, and *Nortek, Inc. v. Alexander Grant & Co.*, D.R.I., C.A. No. 5384 (unreported op. 5/6/74), this Court explored many of the important factual considerations at length in granting motions to transfer. Those decisions distinguish themselves from the case at bar in two important respects: one, there was an identical action already pending in the proposed transferee forum; and two, movants had buttressed their claims of substantial inconvenience with documentary support. Here, in contrast, no other suit has been filed; defendants' fears and speculation as to duality of litigation, *compare Leesona, supra*, are just that. Similarly, in contrast to defendants' unsubstantiated claims, plaintiffs have filed affidavits in opposition and a point-by-point legal analysis of defendants' arguments which convincingly demonstrate that defendants have failed to meet their burden on this motion. Based upon its own analysis of the legal issues involved herein in granting a temporary restraining order, the Court is inclined to agree with plaintiffs that "this is simply not the kind of case where it is critically necessary to have ready access to a slew of voluminous and complex corporate and accounting documents. Nor is this a case where defendants' witnesses' credibility is crucial". Pl. Reply Memo, in opposition to Def. Motion to Transfer at 7. The plaintiffs' entire action focuses in the tender offer and the language expressed therein. They do not question its accuracy so as to require examination of corporate books or accounting records. Although defendants suggest that all of King Louie's management will be required to spend weeks in Rhode Island as witnesses, and plaintiffs argue that all of their witnesses are here, the Court has been provided no firm indication of the number or identity of either side's witnesses, or whether any oral testimony will in fact be necessary. As a result, the Court must conclude that the relative inconvenience to the parties of the two forums is evenly balanced. Furthermore, plaintiffs' action is grounded primarily in federal securities law, which this Court is equally capable of resolving, in an equally expeditious manner, as the proposed transferee forum.

In their remaining argument on this motion, defendants focus on plaintiffs' assertedly small holdings in King Louie in comparison to the larger number of shareholders concentrated in the Kansas City, Missouri area. Under this argument, defendants challenge the appropriateness of the chosen forum to entertain a shareholder derivative suit and plaintiffs' contention, for class certification purposes, that they will fairly and adequately represent the designated class. Only the former aspect is relevant to the motion to transfer, and the latter will be considered in subsequent paragraphs. In response plaintiffs have submitted the July 8, 1976, affidavit of Paul F. Greene to lend factual support to their argument that:

1) The "large concentration" of King Louie stock held in the Kansas City area is caused by the defendants' ownership of the bulk of it;

2) Prior to the commencement of the tender offer, plaintiffs collectively held 12.1% of the publicly held shares of King Louie stock;

3) As a result of the tender offer, approximately 58,000 publicly held shares remain, increasing plaintiffs' relative share (over 18,000) of the publicly owned stock to approximately 31%;[5]

4) Plaintiffs contend that, both before and after the tender offer, they constitute the largest single bloc of King Louie's public shareholders.

Defendants have not disputed the validity of these factual allegations. As a result, the Court concludes that defendants' reliance on *Koster v. American Lumbermen's Mutual Insurance Co.*, 330 U.S. 518, 521–522, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), is misplaced. Unlike *Koster*, the present forum was not selected by an isolated, individual shareholder. *See also* note 5, *supra*. The other factors discussed in *Koster* (choice of laws, location of witnesses and records) have already been considered and rejected as insufficient to overcome even

the "lesser showing of inconvenience" necessary to support transfer of a shareholder derivative suit. *See* 7A Wright & Miller, *supra*, § 1825 at 324.

### III. Class Certification

Plaintiffs have moved for an order, pursuant to Fed.R.Civ.P. 23(c), certifying them as representatives of the class of all shareholders, excluding defendants (and Mrs. Victor Lerner), who owned King Louie stock between April 13 and April 30, 1976 and to whom the tender offer was made ("public shareholders"). There are approximately 855 individuals in this class. Approximately 260 of these individuals ("subgroup A") have sold their shares to King Louie in response to the tender offer. Thus, of the total class of public shareholders described by plaintiffs, approximately 600, including plaintiffs, continue to own King Louie stock today ("subgroup B").

In support of their contention that the requirements of Rule 23[6] have been met,

---

**5.** This depletion in the ranks of the public holders of King Louie stock is significant since it appears that only those who have retained stock ownership, despite the tender offer, have standing to maintain a derivative action. *See* 7A Wright & Miller, *supra*, § 1826 and authorities cited therein.

**6.** Rule 23 provides:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications

or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(c) Determination by Order Whether Class Action to be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (b)(3), the court shall direct to the

plaintiffs assert that they meet each of the four prerequisites of Rule 23(a), that their action is properly maintainable under each of subsections (b)(1), (b)(2), and (b)(3), and that, as a result of the preference for class suits under subsection (b)(1) and (b)(2), the notice provisions of subsection (c)(2) are not applicable.

Defendants' response may be summarized as follows:

A. "Numerosity" (R. 23(a)(1)): no objection.

B. "Commonality" (R. 23(a)(2)): individual questions of reliance/proximate cause and not common questions of law or fact, predominate.

C. "Typicality" (R. 23(a)(3)): defenses are not typical, in that,

1. unlike subgroup A, plaintiffs lack standing to raise violations of § 10(b) of the Act and R. 10(b)(5) (Count II of the amended complaint);

2. subgroup A members are not entitled to equitable relief.

D. "Fair and adequate representation of the class" (R. 23(a)(4)): plaintiffs cannot fairly and adequately protect the interests of subgroup A and simultaneously maintain a derivative action on behalf of King Louie.

E. Notice to class members is appropriate under R. 23(d)(2) due to the inadequacy of representation by plaintiffs.

### A. Numerosity

 Plaintiffs have satisfied this requirement either as to the designated class or only subgroup B.

### B. Commonality

Relying upon antitrust law, e. g., *Kinzler v. New York Stock Exchange,* 62 F.R.D. 196 (S.D.N.Y.1973), defendants assert that each class member is required to prove individual "economic coercion" to tender his stock in response to the tender offer in order to establish a violation of R. 10B–5 and

members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel. (3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class. (4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly. (d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

§ 14(e). As a result, defendants claim, individual and not common questions of fact predominate.

■■■■ Defendants' reliance on federal antitrust law is misplaced. Although proximate causation must be established as a prerequisite to recovery, in the area of federal securities law, the Supreme Court has held as to proxy statements, *Mills v. Electric Auto-Lite*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and as to § 10(b)/R. 10b–5. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), that this causal relationship may be established by a generalized, rather than individualized, objective test:

> "Where there has been a finding of materiality [of the asserted defect], a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress." *Mills, supra* at 385, 90 S.Ct. at 622. *See also Affiliated Ute Citizens, supra* at 153–154, 92 S.Ct. 1456.

Reaffirming this principle, the Supreme Court recently defined materiality in connection with proxy statements as follows:

> "[A]n omitted [or misstated] fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

"Since § 14(e) [regarding tender offers] substantially tracks the language of 10b–5 except for its omission of the purchase and sale requirement," *H. K. Porter Co., Inc. v. Nicholson File Co.*, 482 F.2d 421, 424 (1st Cir. 1973), it is only logical to conclude that the objective test of materiality of *Mills* and *Affiliated Ute Citizens, supra*, applies to plaintiffs' claim under Count I (§ 14(e)) as well.

■■■■ The Court therefore concludes that proof of causation does not detract from plaintiffs' assertion of "commonality". Furthermore, the Court accepts plaintiffs' contention that common questions of law and fact predominate. The focus of plaintiffs' entire action is a single written document, the tender offer, which was allegedly sent to every member of the purported class to elicit an identical response.

> "[W]hen it is alleged that hundreds of investors were damaged as a result of having been uniformly misled by the same false and misleading prospectus which induced them to purchase similar securities . . ., the existence of common questions of law and/or fact is inevitable." *In re Cohen's Will*, 51 F.R.D. 167, 174 (S.D.N.Y.1970).

See generally 7A Wright & Miller, supra, § 1781 at 91 n. 33.

### C. Typicality

Defendants focus their objections herein upon the assertedly material distinction between tendering (subgroup A) and nontendering (subgroup B) public shareholders of King Louie.

In Count II plaintiffs claim a violation of § 10(b) and R. 10b–5 on behalf of themselves and the designated class. It is not clear whether plaintiffs also seek to maintain a derivative action on behalf of King Louie for such violations. The purchaser-seller requirement for standing under § 10(b)/10b–5, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), would be thereby met since King Louie was a purchaser pursuant to the tender offer. *Id.* at 738, 95 S.Ct. 1917. There is similarly no question that a member of subgroup A would have standing, as a seller of his King Louie shares, to assert this claim. Defendants contend, however, that plaintiffs, as nontenderers (subgroup B), do not have such standing and thus the defenses which may be raised against them are not typical of the entire designated class.[7]

---

**7.** In view of plaintiff's standing to raise the § 10(b)/10b–5 violations derivatively and to raise the equally broad § 14(e) violations both derivatively and as to the entire designated class, the practical significance of this objection is somewhat elusive. *See McCloskey v. Epko Shores, Inc.*, 391 F.Supp. 1279, 1281–1282 (E.D.Pa.1975); *H. K. Porter Co., Inc. v. Nicholson File Co.*, 353 F.Supp. 153, 162–165 (D.R.I. 1973), *aff'd*, 482 F.2d 421 (1st Cir. 1973).

Defendants' argument overlooks the posture of the proceedings. The boundaries of the two subgroups are not etched in stone, but only tentatively established. Plaintiffs came before the Court to enjoin further sales pursuant to the tender offer, whose lifespan, they asserted, was about to be extended. According to the June 17, 1976, affidavit of Albert N. Bertozzi, one of the plaintiffs, the tender offer presented only two options to him: sell his stock or institute these proceedings. Thus, by bringing this action, he has at least temporarily avoided joining subgroup A. In seeking injunctive relief, plaintiffs argue that they have standing to raise § 10(b)/10b–5 violations although they have not yet joined the ranks of subgroup A tendering shareholders. They rely on *Mutual Shares Corp. v. Genesco,* 384 F.2d 540 (2d Cir. 1967), which was decided by the same circuit that fashioned the purchaser-seller rule upheld by the Supreme Court in *Blue Chip Stamp, supra,* in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir. 1952), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356.

With minor variations, the *Mutual Shares* decision has been uniformly interpreted to acknowledge the standing of individuals such as plaintiffs herein to sue for *injunctive relief only* to prevent consummation of and their resultant injury from an asserted § 10(b)/10b–5 violation.[8] The Third Circuit's analysis of this concept in *Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139, 156 (1973), is representative:

"In *Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), this court held that a private party not a purchaser or seller, seeking *injunctive relief* for a 10b–5 'violation' does have standing if he can establish a causal connection between the violations alleged

and his injury. *Id.* at 173; accord, *Mutual Shares Corp. v. Genesco, Inc.,* 384 F.2d 540 (2d Cir. 1967); *Britt v. Cyril Bath Co.,* 417 F.2d 433, 436 (6th Cir. 1969). The rationale was premised on the policy of the Securities Exchange Act to eliminate deceptive and unfair practices in security trading and to protect the public from inaccurate, incomplete, and misleading information, and to provide the public with the opportunity to make knowing and intelligent decisions regarding the purchase or sale of securities. A suit seeking an injunction against deceptive practices in security sales would promote a free and open securities market and protect prospective purchasers and sellers. An injunction suit, as distinguished from an action for damages, will therefore, in appropriate circumstances, be permitted under the rule even though the complainant is not a purchaser or seller." (Emphasis in original.)

I do not read the *Mutual Shares* principle to confer § 10(b)/10b–5 standing upon plaintiffs herein to seek equitable relief other than injunctive relief or to seek damages. To read *Mutual Shares* so expansively would permit an ingenious plaintiff to negate the *Birnbaum* rule effectively by adding a request for injunction to what is basically a damage action or by devising novel forms of relief which could be characterized as "equitable" in nature. The district court in *Heyman v. Heyman,* 356 F.Supp. 958, 964 (S.D.N.Y.1973), reached a similar conclusion:

"Plaintiff argues that *Mutual Shares* eliminated the purchaser/seller requirement when injunctive relief is requested and contends that she has standing at least to maintain her claims for equitable relief. But she fails to recognize that cases such as *Kahan* and *Mutual Shares*

---

**8.** *See, e. g., Lutgert v. Vanderbilt Bank,* 508 F.2d 1035 (5th Cir. 1975); *Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139 (3d Cir. 1973); *Vincent v. Moench,* 473 F.2d 430, 435 (10th Cir. 1973) (suspending *Birnbaum* requirement in suit for "equitable" relief); *Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir. 1970), *cert. denied, sub nom. Glen Alden Corp. v. Kahan,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290;

*Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787 (2d Cir. 1969), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50; *Britt v. Cyril Bath Co.,* 417 F.2d 433 (6th Cir. 1969); *McCloskey v. Epko Shores, Inc.,* 391 F.Supp. 1279 (E.D.Pa.1975); *Monheit v. Carter,* 376 F.Supp. 334 (S.D.N.Y.1974); *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154 (S.D.N.Y.1974); *Heyman v. Heyman,* 356 F.Supp. 958 (S.D.N.Y.1973).

involved efforts to enjoin continuing deceptive practices where the resultant loss to the stockholders had not yet occurred. In fact, it has already been held in this district that *Mutual Shares*, while it permitted a shareholder to seek injunctive relief against a threatened fraud, has no application where the alleged fraudulent exchange has been fully consummated. *Berne St. Enterprises Inc. v. American Export Isbrandtsen Co.*, CCH Fed.Sec.L. Rep. par. 92,711 (S.D.N.Y.1970) (Mansfield, J.). . . . I adopt Judge Mansfield's holding. To rule otherwise would be to suggest that *Birnbaum* could be discarded whenever a complaint contained some prayer for equitable relief.

7. I therefore find myself agreeing with Kellogg, [The Inability to Obtain Analytical Precision Where Standing to Sue under Rule 10b–5 is Involved, 20 Buffalo L.Rev. 93 (1970)], where he states: '[i]f the allegation (or the availability) of retrospective or prospective injunctive relief would be sufficient to permit a non-purchaser or non-seller to sue, even though such relief would not be addressed to curbing a continuing wrong or absolving it altogether, the current "injunctive relief exception" to the *Birnbaum* doctrine would largely envelop the rule.' 20 Buffalo L.R. at 107."

(Other footnotes omitted.)

The Court therefore concludes that plaintiffs herein have standing to assert violations of § 10(b)/10b–5 individually and on behalf of the designated class as to their request for injunctive relief only. If all other requirements for class certification are met, the scope of the class will be so limited as to Count II of the amended complaint.

Defendants also argue as to all claims that equitable relief would not be appropriate for subgroup A since it has an adequate remedy at law. Plaintiffs disagree, claiming that recission, an equitable remedy, may be appropriate for all class members. Defendants' argument focuses upon differences in the appropriate form of remedy to be fashioned for members of the designated class. It does not in any way undermine plaintiffs' assertion that, as to liability, common questions of law and fact predominate. Assuming *arguendo* that defendants are correct, the relief aspect of this action may be severed and tried individually if and when liability has been established. *See generally* 7A Wright § Miller, *supra*, § 1781 at 81.

## D. Fair and Adequate Representation

Defendants argue that plaintiffs cannot fairly and adequately represent a class of public shareholders suing King Louie and, at the same time, maintain a derivative action on behalf of King Louie. Since they fail to delve beneath the "surface duality" created by such a two-pronged attack, in essence defendants urge the Court to find that this procedural posture creates a *per se* conflict of interests; the class action aspect seeking recovery *from* the corporation, among others, the derivative suit seeking recovery *for* the corporation. This argument is best expressed in *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93, 94–95 (S.D.N.Y.1972), one of the few reported decisions on this issue:

"The principal issue in this controversy is whether the Freed-Liss actions may be maintained as class actions. A threshold question therefore is whether Freed and Liss 'will fairly and adequately protect the interests of the class.' *Maynard Merel & Company v. Carcioppolo*, 51 F.R.D. 273 (S.D.N.Y.1970).

The Ruggiero plaintiffs strenuously urge that Freed and Liss cannot sue derivatively on behalf of American Bioculture and, at the same time, seek recovery from that corporation as the representatives of the class. I agree.

It is true that as a general rule the mere fact that a class plaintiff has an additional interest not shared by the class he seeks to represent does not preclude class action treatment. See *Mersay v. First Republic Corporation of America*, 43 F.R.D. 465 (S.D.N.Y.1968); *Herbst v. Able*, 47 F.R.D.

11 (S.D.N.Y.1966). However, where a class plaintiff has an interest which is antagonistic to those of the class the courts have consistently denied class action treatment. See e. g., *Guttmann v. Braemer*, 51 F.R.D. 537 (S.D.N.Y.1970); *Maynard, Merel & Company v. Carcioppolo*, 51 F.R.D. 273 (S.D.N.Y.1970).

In this case, it is difficult to see how the Freed plaintiffs can reconcile their existing duties to Bioculture and its present shareholders as derivative plaintiffs with the duties which they seek to assume on behalf of a class which attacks Bioculture and embraces persons who now hold no Bioculture shares.

I fail to see how, on the one hand, they can vigorously seek recovery on behalf of those who have an equity interest in the corporation and, on the other hand vigorously seek recovery from the corporation on behalf of those who have no equity interest in the corporation. Cf. *International Brotherhood of Teamsters, etc. v. Hoffa*, 242 F.Supp. 246, 256 (D.C.1965); *Lewis v. Shaffer Stores Company*, 218 F.Supp. 238 (S.D.N.Y.1963). The conflict is further exacerbated by the fact that the Freed plaintiffs still hold a substantial equity interest in American Bioculture which may well outweigh any *personal* interest they have in successfully prosecuting the class action claim. Finally, there is a substantial question as to whether the attorneys for the Freed plaintiffs can represent them in the derivative suit and the class action without violating the Canons of Ethics.

I therefore find that the Freed-Liss plaintiffs cannot fairly and adequately represent the class they seek, to represent. The motion to declare 71 Civ. 4607 and 72 Civ. 776 class actions is denied."

(Emphasis in original; footnote omitted.)

*See also Hawk Industries, Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623–624 (S.D.N.Y.1973).

The contrary position is articulated, albeit on a R. 12(b)(6) motion to dismiss, by Judge Frankel in *Heilbrunn v. Hanover Equities Corp.*, 259 F.Supp. 936, 938–939 (S.D.N.Y.1966):

"2. Defendants urge that there is a fatal inconsistency between plaintiffs' role as protectors and prosecutors of the corporation's interests in the derivative third count and their demands for recovery from the corporation in the first two.

\* \* \* \* \* \*

As to the role of plaintiffs as both 'friend' and 'enemy' to the corporation, this surface duality is in fact a routine matter in the courts. For more purposes than pleading, 'antagonism' between the derivative plaintiff and those who really run (i. e., are) the corporation is a common phenomenon. Cf. *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). We need look no farther for illustration than this case, where the corporation and its able counsel pull the laboring oar on a motion to dismiss a claim purportedly for the corporation's benefit. *In the last analysis* considering only the complaint, which is all we have, *the action has a basic goal which entails no real inconsistencies*—to air the nature and allegedly wrongful aspects of the exchange offer plaintiffs assail."

(Emphasis added; footnote omitted.)

The cases supporting defendants' argument have not been read to establish the *per se* rule urged upon the Court. *See Miller v. Fisco*, 63 F.R.D. 132, 134 (E.D.Pa. 1974); *Hawk Industries v. Baush & Lomb, supra*. But cf. *Madonick v. Denison Mines, Ltd.*, 63 F.R.D. 657, 659 (S.D.N.Y.1974). Indeed, the court in *Hawk Industries* specifically distinguished the two conflicting authorities on the basis that *Heilbrunn, supra*, involved alternative theories for recovery presented in the same action so that "counsel could vigorously pursue any line of evidence which would result in recovery", whereas *Ruggiero* and the case before it bound counsel to pursue two independent actions pending in different courts. *Hawk Industries, supra* at 623. To the extent that this distinction is material, the instant matter is directly aligned with *Heilbrunn, supra*.

■ The Court agrees that no *per se* rule controls this question, and feels that the fashioning of such an inflexible rule would be singularly inappropriate for class action questions. The Court is instead persuaded that the analysis of Judge Frankel in *Heilbrunn, supra,* is applicable herein: the asserted "antagonism" between the primary and derivative actions pressed herein is no more than a "surface duality". Since plaintiffs' success as to either action is equally contingent upon the proof of the same nucleus of facts, they and their counsel can be expected to attack all fronts with equal vigor. Plaintiffs' "antagonism" to the proposed class is no more nor less real than their "antagonism" to the corporation. If every derivative suit were vulnerable to the claim that it was not in the best interests of the corporation, as evidenced by the majority's unwillingness to support the action, there would be no such form of action.

At most, defendants perceive a potential conflict regarding the appropriate form of remedy to be fashioned in the event plaintiffs prevail, if they can vis-a-vis King Louie, in both the primary and derivative actions. Rejecting a similar argument against certification in *Lamphere v. Brown University,* 71 F.R.D. 641, 650 (D.R.I.1976), this Court stated:

"Professors Wright and Miller note that 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.' 7 Wright & Miller, *supra,* § 1768 at 639. . . . There is no conflict of interest among class members regarding th[e] central issue [of liability] . . . .. The potential conflict troubling the defendants can arise only at the remedy stage of litigation, and only if the basic question of the defendants' liability is first resolved in the plaintiffs' favor. . . . If the potential conflict . . should materialize when and if remedy proceedings are reached in this case, Rule 23 gives this Court sufficient flexibility to take appropriate corrective measures at that time."

## E. Maintainability as a Class and Notice to Class Members

✗ ■ Plaintiffs contend that their class action meets the criteria of each of the subsections of Rule 23(b). *See* note 6, *supra.* In such a situation, commentary and case law agree that the class should be treated as a (b)(1) and/or (b)(2) class, rather than a (b)(3) action, where the privilege of opting out of the class may give rise to the multiplicity of suits and inconsistent or varying adjudications that R. 23 was designed to prevent. *See e. g., Mungin v. Florida East Coast R. Co.,* 318 F.Supp. 720, 730 (M.D.Fla.1970), *aff'd per curiam,* 441 F.2d 728 (5th Cir. 1971), *cert. denied,* 404 U.S. 897, 92 S.Ct. 203, 30 L.Ed.2d 175; 7A Wright & Miller, *supra* §§ 1772, 1775, 1777; 3B Moore, Federal Practice par. 23.31 [3].

On its face, the action does appear to fit the description of subsection (b)(1). *Cf. Tober v. Charnita,* 58 F.R.D. 74, 81 (M.D.Pa. 1973). Subsection (b)(2) has been interpreted to refer to suits brought *primarily* for injunctive or declaratory rather than monetary relief. *See, e. g., Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir. 1968); *Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43, 53 (D.Del.1974); Notes of the Advisory Committee, Proposed Rules of Civil Procedure, 39 F.R.D. 98, 102 (1965). *See generally* 7A Wright & Miller, *supra,* § 1775 at 22–23 and nn. 30–32. Plaintiffs seek both final injunctive relief and a substantial monetary award. Defendants, however, have not argued that certification is any less appropriate under subsections (b)(1) or (b)(2) than subsection (b)(3) or that this action cannot properly be characterized as one primarily seeking injunctive relief. As a result, the Court is guided by Professors Wright and Miller to accept plaintiffs' assertion that their class action meets the requirements of subsection (b)(2):

"Disputes over whether the action is primarily for injunctive or declaratory relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) pre-

requisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental. Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis." 7A Wright & Miller, *supra*, § 1775 at 23. In sum, the Court concludes that the action may proceed as a class under subsections (b)(1) and (b)(2), so that the mandatory notice provisions of R. 23(c)(2) do not apply.

 Defendants further ask the Court, in the exercise of its discretion, to order notice pursuant to R. 23(d). *See* note 6, *supra*. At the present stage of these proceedings and in view of the class members' inability to opt out, the Court does not believe that such notice is necessary or expeditious to a resolution of plaintiffs' request for a preliminary injunction. The request is therefore denied without prejudice to its reassertion as to the merits and/or the proposed judgment. The question as to which party should initially bear the cost of notice is therefore reserved.[9]

Plaintiffs shall prepare an order denying defendant's motion to dismiss or transfer the action—and certifying the action as a class suit in accordance with the Court's ruling herein, *i. e.* plaintiffs shall be certified as representative of the class of all public shareholders of King Louie, as defined herein, as to all aspects of the class action counts of the amended complaint except Count II thereof, where plaintiffs' representation of the class is limited to injunctive relief only.

---

9. The cost of notice is recoverable by the prevailing party. Although the issue as to which party should bear this cost is hotly contested and was not decided by the Supreme Court in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179 n. 15, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), I note that the cost of sending notice to some 855 shareholders (at, for example, 25¢ per mailing) could hardly be considered a serious deterrent to plaintiffs' continued maintenance of the suit.