Matthew H. McCLOSKEY, IV on behalf of himself and all others similarly situated

v.

EPKO SHOES, INC., et al.

Civ. A. No. 74–1351.

United States District Court, E. D. Pennsylvania.

March 24, 1975.

1280

Tom P. Monteverde and Edward J. O'Malley, Philadelphia, Pa., for plaintiff.

Matthew Broderick and Warren Vogel, Philadelphia, Pa., for defendants.

## MEMORANDUM

GORBEY, District Judge.

Plaintiff is the record owner of 1,700 shares of common stock of defendant corporation Epko Shoes, Inc. (hereinafter "Epko"), and seeks to represent a class consisting of all holders of Epko shares as of May 1, 1974, except for three of the defendants. In his complaint plaintiff challenges a tender offer made by defendant K B Marketing Systems, Inc. for the outstanding shares of Epko common stock. Jurisdiction is based on the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78a et seq.

## FACTS

Count I of the complaint alleges that on December 31, 1973, and January 2, 1974, the defendants, Arthur Epstein and Paul Epstein (hereinafter "Epstein defendants"), their families and trusts for their benefit, owned a total of 144,238 shares of Epko common stock, which on those dates they sold to the defendant K B Marketing Systems, Inc. at a price of $9.06 per share pursuant to an agreement executed March 28, 1973, and amended on December 31, 1973. Plaintiff further alleges that the price was in fact in excess of $9.06 per share because as a condition to the purchase agreement, the Epstein defendants entered into employment and consulting contracts with Epko. Also, pursuant to said agreement (hereinafter called the "Epstein Agreement"), defendant K B Marketing Systems, Inc. was required to offer to all shareholders of Epko, for a period of 30 days, the right to exchange each Epko common share for a security of K B Marketing Systems, Inc., which in the opinion of an investment banking firm, was the economic equivalent of the terms and conditions under which the Epko shares were purchased from the Epstein defendants.

Pursuant to this agreement, K B Marketing Systems, Inc., on May 1, 1974, made a tender offer to all shareholders of Epko common stock (except K B Marketing Systems, Inc.) of one share of K B Marketing Systems, Inc. Series A—nonvoting preferred stock for each share of Epko common. The preferred stock has a $10 preference over common shares in liquidation, is redeemable at any time at a price of $10 per share, and is convertible after June 1, 1974 into one-half share of K B Marketing Systems, Inc. common.

Count II of the complaint incorporates all of the allegations of Count I and invokes pendent jurisdiction for what appears to be a claim for breach of fiduciary duty.

## DISCUSSION

Under Count I of the complaint plaintiff alleges that the prospectus for the tender offer is materially false and misleading, claiming jurisdiction under Sections 10(b) and 14(e) of the Securities Exchange Act of 1934, as amended (hereinafter "the Act"), 15 U.S.C. §§ 78j(b) and 78n(e).

Specifically, plaintiff puts forth two grounds for this allegation. First that the Epstein defendants received more than $9.06 per share by virtue of the consulting contracts which were a part of the agreement (complaint, paragraph 17), and secondly that the prospectus represents that the K B Marketing Systems, Inc. offer is the "economic equivalent" of $9.06 per share, when in fact it is worth substantially less (complaint, paragraph 16).

## STANDING UNDER § 14(e) AND § 10(b) OF THE ACT

 Defendants first argue that the plaintiff as a nontendering shareholder does not have standing to challenge the tender offer, since he was neither a purchaser or seller of Epko stock during the period of the tender offer. Defendants' argument is based on the purchaser-seller rule announced in the case of Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). However, this ruling was made in an action brought under § 10(b) of the Act. In 1968, Congress amended the Act [1] by adding § 14(e) which specifically deals with tender offers. The overriding purpose of § 14(e) is the protection of the investor. H. K. Porter Co., Inc. v. Nicholson File Co., 482 F.2d 421 (1st Cir. 1973); Ronson Corp. v. Liquifin Aktiengesellschaft, 370 F.Supp. 597 (D.N.J.1974), aff'd, 3 Cir., 497 F.2d 394. By not using the words "purchase or sale" as used in § 10(b) of the Act it appears that one of the goals of § 14(e) was to eliminate the purchase and sale

requirement in the tender offer situation. *See* Cash Tender Offers, 83 Harv. L.Rev. 377 (1969). The Court of Appeals for the Second Circuit in the case of Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937 (2d Cir. 1969) announced its intention to hold that a nontendering shareholder does have standing under § 14(e) to challenge a tender offer. To hold otherwise it would be clearly contrary to the legislative purpose of protection of the investor. Plaintiff's standing also includes an action for damages not just injunctive relief. Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341 (2d Cir. 1973), cert denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148; H. K. Porter Co., Inc. v. Nicholson File Co., *supra*; Dyer v. Eastern Trust and Banking Co., 336 F.Supp. 890 (D. Maine 1971); *See Also* Emmi v. First-Manufacturers National Bank of Lewistown & Auburn, 336 F.Supp. 629 (D. Maine 1971). The fact that the tender offer has now been completed cannot be allowed to preclude all relief for violation of the securities law. Crane Co. v. Westinghouse Airbrake Co., 419 F.2d 787 (2d Cir. 1969), cert denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50. There may be various forms of relief which are appropriate in this case. We will not at this early point in the case hold that one particular type of relief is inappropriate or not available to plaintiff.

In light of our holding with respect to plaintiff's standing under § 14(e), we need not decide the issue of plaintiff's standing under § 10(b) of the Act. Suffice it to say that at least as to injunctive relief it appears that plaintiff would also have standing under § 10(b). Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970), cert denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Defendants argue that there can be no injunctive relief because the tender offer

and exchange have now been consummated. As stated earlier, this is not the law. *See* .*e. g.* Crane Co. v. Westinghouse Airbrake Co., *supra*.

## RELIANCE IN § 14(e) ACTION BY NONTENDERING SHAREHOLDER

Defendant further argues that since plaintiff did not tender his shares, he could not have relied on any alleged misrepresentation. This argument was ably dealt with by the Court of Appeals of the Second Circuit in the case of Crane Co. v. Westinghouse Airbrake Co., *supra*, where the court stated 419 F.2d at page 797:

". . . reliance is an element of causation which plays little role in nondisclosure cases. As we pointed out in *List* [List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965), cert denied, 382 U.S. 811, 86 S.Ct. 23, 15 L. Ed.2d 60 (1965)], 'the test of "reliance" is whether "the misrepresentation is a substantial factor in determining the course of conduct which results in [the plaintiff's] loss." . . The reason for this requirement . . is to certify that the conduct of the defendant actually caused the plaintiff's injury,' since a 'basic . . . element of tort law' is 'the principle of causation in fact.' 340 F.2d at 462, 463."

While the case at bar is a misrepresentation case as opposed to a nondisclosure situation as the Crane case, we think that in tender offer situations the reasoning should be the same. In a situation such as this, the nontendering shareholder can have the value of his holdings seriously impaired by a false and misleading statement in a prospectus. To require a showing of personal reliance by the plaintiff would, in the normal case,[2] necessitate the reinstatement of the purchaser-seller rule since the only way to

---

**2.** We could envision a case where a misstatement tends to make the tender offer appear less favorable than it actually is, thus leading some shareholders to not tender their shares to their detriment. However, common sense would indicate that misstatements of this type would be rare.

rely upon a misrepresentation in a tender offer prospectus and be damaged thereby would be for a shareholder to accept the tender offer and exchange his stock. Section 14(e) was designed to, *inter alia*, dispense with this rule in tender offer situations. See discussion, *supra*. A nontendering shareholder's damage can be completely unrelated to his reliance or even knowledge of the misrepresentation. So long as the misrepresentation is material, the reliance of those shareholders who do tender their stock is sufficient to establish the causal connection between plaintiff's injury and defendant's violation of the Act. Chris-Craft Industries, Inc. v. Piper Aircraft Corp., *supra*. *See also* Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460; Neuman v. Electronics Specialty Co., CCH Federal Securities Law Reporter, ¶ 92,591 (N.D.Ill.1969). We need not decide at this point in the case what the extent of plaintiff's burden will be with respect to proving such reliance. *See* Reliance and Private 10b–5 Actions, 88 Harv.L.Rev. 584.

## FAILURE TO STATE CAUSE OF ACTION UNDER THE ACT

Next, defendants argue that the complaint should be dismissed for failure to state a cause of action under the Act. As stated before, there are two aspects of the prospectus which plaintiff alleges are materially false and misleading.

First, plaintiff alleges that the prospectus represents the tender offer to be the economic equivalent of the $9.06 per share paid to the Epstein defendants. This plaintiff maintains is materially false and misleading. Defendants maintain the prospectus makes no such representation.

 The prospectus in question states that the tender offer is being made pursuant to the terms of the Epstein agreement which require K B Marketing Sys-

tems, Inc. to make a tender offer for Epko common stock "which in the opinion of an investment banking firm is the economic equivalent of the terms and conditions under which the Epko common shares were purchased from the Epstein families under the Epstein agreement" (prospectus, page 6). The prospectus further states that K B Marketing Systems, Inc. retained the investment banking firm of Bear, Stearns & Co., and that Bear, Stearns & Co. have submitted their opinion that:

> "Based principally upon the dividend conversion and redemption terms of the K B Marketing preferred offered hereby, such preferred has an economic value that is equivalent to the per share consideration received by the Epstein families pursuant to the Epstein agreement. Such firm [Bear, Stearns & Co.] has advised K B Marketing that in rendering such opinion it gave no consideration to the market ability of such preferred, which will be affected by among other factors, the number of shareholders accepting the exchange offer. This is, of course, no assurance that any trading market for the K B Marketing preferred will develop and if such a market does develop there is no assurance that such preferred will immediately or subsequently sell at $9.06 per share."[3]

(Prospectus, page 8)

Plaintiff in essence is claiming that the defendants cannot hide behind the language "in the opinion of an investment banking firm." Plaintiff would have us read the prospectus as if that statement were not there. Plaintiff does not allege that there was no such opinion or that the prospectus misstates this opinion. The fact that an unsophisticated investor may be confused by, or not understand such language is not the test to be applied. Shvetz v. Industrial Rayon Corp., 212 F.Supp. 308 (S.D.N.Y.1960).

 The court in Chris-Craft Industries, Inc. v. Bangor Punta Corp., 426

3. It is apparent from this quotation that Bear, Stearns & Co. presumed that the per

share consideration paid to the Epstein defendants was $9.06 per share.

F.2d 569 (2d Cir. 1970) implied that such statements of value would not be misleading in the context of a prospectus and registration statement. That court speculated that a statement that securities were to be offered "which in the judgment of First Boston Corporation were worth not less than $80.00 per share" if made in the context of a prospectus would not be misleading, stating at page 575:

"It is enough to point out that under either construction the SEC had no way of checking the honesty of the figure, and that the public did not receive the detailed information it would have received from a prospectus issued after a registration statement had been filed.[4] Such information would have eliminated the possibility perhaps the probability that some persons would have construed the $80 figure as referring to market value when that value was neither accurate nor intended."

There must be a false and misleading statement. The Epstein agreement and tender offer prospectus in this case were carefully worded to avoid making any representation such as plaintiff urges. The best that can be said of plaintiff's allegation in this regard is that a cursory reading by a layman may convey the impression that K B Marketing Systems, Inc. represents the offer to be the economic equivalent of the terms of the Epstein agreement. As stated before, this is not the test to be applied. *See also* Abramson v. Nytronics, Inc., 312 F.Supp. 519 (S.D.N.Y.1970). Documents such as the prospectus in this case are by nature complex and require careful reading. Thus, we hold that plaintiff's allegations regarding the economic equivalence of the offer does not state a claim under the Act for which relief can be granted.[5] The fact that the Epstein agreement required K B Marketing Systems, Inc. to obtain this opinion does

not change the situation or the accuracy of the statements in the prospectus.

Now we consider plaintiff's claims that the prospectus is false and misleading by misstating the value of the consideration received by the Epstein defendants under the Epstein agreement. Specifically, plaintiff claims that the consulting contracts were part of that consideration and that as a result of these contracts, the Epstein defendants received consideration valued in excess of the $9.06 per share stated in the prospectus.

Plaintiff has not alleged or argued that the value of the services of the Epstein defendants to be rendered under the consulting and employment contracts in the Epstein agreement is not equal to the compensation to be paid. Absent such an allegation, we fail to see how the prospectus is false and misleading. The fact of the contracts was disclosed as was the compensation to be paid. Nowhere in the complaint is it alleged that the shareholders were not fully and accurately informed as to the facts regarding these contracts. Plaintiff has not made an allegation which is sufficient to sustain a claim that the prospectus is false and misleading and in violation of the Act. Such allegations must be made with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Lewis v. Varnes, 368 F.Supp. 45 (S.D.N.Y.1974). Accordingly, we will grant defendants' motion to dismiss Count I of the complaint. Since Count II is based on pendent jurisdiction it is not necessary for us to consider defendants' allegations with respect to it and Count II will also be dismissed. However, plaintiff may be able to make a sufficient allegation with respect to the employment and consulting contracts. Thus, our dismissal will be with leave to amend the complaint within twenty (20) days.

---

4. In the *Chris-Craft* case the statement was made in a news release not in a prospectus and accompanying registration statement.

5. It is customary to obtain such opinions in these situations, to hold otherwise would

mean that offerors would be "damned if they do and damned if they don't", since failure to disclose such opinion may subject them to liability under the Act.