Jessie **SHEINBERG**, Plaintiff,

v.

**FLUOR CORPORATION**, Fluor Acquisition Corporation, and St. Joe Minerals Corporation, Defendants.

No. 81 Civ. 2275 (LBS).

United States District Court,
S. D. New York.

April 23, 1981.

Rubin, Baum, Levin, Constant & Friedman, Martin A. Coleman, Jeffrey R. Mann, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, Edmund H. Kerr, Judith A. Ripps, Thomas J. Maloney, Jonathan I. Blackman, New York City, for defendants Fluor Corp. and Fluor Acquisition Corp.

Debevoise, Plimpton, Lyons & Gates, Asa Rountree, Meredith M. Brown, Standish F. Medina, Jr., New York City, Jeffrey Drummond, for defendant St. Joe Minerals Corp.

## OPINION RENDERED IN OPEN COURT

SAND, District Judge.

This action is currently before the Court upon plaintiff's application for a preliminary injunction enjoining the tender offer by Fluor Corporation through Fluor Acquisition Corporation, hereinafter referred to collectively as Fluor, to purchase up to approximately 45 percent of the shares of common stock of St. Joe Minerals Corporation.

Oral argument was heard on April 22, 1981. Neither plaintiff nor defendants have sought an evidentiary hearing or leave to conduct any discovery.

For the reasons stated herein, the plaintiff's application is denied.

*Background*

Based on the record before the Court, the following facts appear:

When Fluor announced its tender offer on March 31, 1981, after a short period of negotiations, there was already a tender offer outstanding for the common stock of St. Joe. That offer by Seagram & Sons, Inc., was a cash offer for all of St. Joe's stock at $45 per share, which was scheduled to expire on April 10, 1981. The Seagram offer was withdrawn subsequent to commencement of the Fluor tender offer.

The Fluor tender offer was made after Fluor and St. Joe executed on Sunday, April 5, 1981 a merger agreement which was authorized by the board of directors of both companies.

This merger agreement was part of a two-step transaction.

The first step was the Fluor tender offer for up to approximately 45 percent of the common stock of St. Joe at a price of $60.

The second step was the proposed merger of Fluor and St. Joe in which 1.2 shares of Fluor would be exchanged for each share of St. Joe common stock.

The proposed merger was subject to various conditions, including approval by the shareholders of both companies.

Fluor sought and received a no-action letter from the SEC which exempted the tender offer from 17 CFR, Section 240.-10b–6 and Section 240.10b–13, and which stated a condition that shares could be acquired up to thirty days before the merger vote or five days before mailing of the proxy materials, whichever occurred first.

The tender offer was scheduled to expire before the mailing of the merger prospectus, and the materials sent to shareholders so stated.

The St. Joe stockholders were thus presented with a choice between tendering their shares for $60 or holding them and voting on the proposed merger or disposing of them in some other way. (The tender offer materials indicate the view that it is likely that the cash transaction would be taxable but that the exchange of stock would be nontaxable.)

The Fluor tender offer was announced on March 31, 1981, and pursuant to SEC Rule 14d–2(b) a Schedule 14D–9 was filed and tender offer materials were sent by Fluor to St. Joe shareholders within five business days on April 6, 1981, along with a letter from the chairman and chief executive officer of St. Joe recommending both the offer and the merger. The reverse side of this letter contains a summary of some of the additional information contained in the Schedule 14D–9 filed by St. Joe, including the conclusions of Smith Barney, Harris Upham & Company, and the First Boston Corporation that the terms of the Fluor offer are fair to St. Joe and its shareholders.

The summary stated that this conclusion was based on familiarity with St. Joe and its financial statements, reports filed with the SEC, and internal business and financial projections, as well as based on consideration of the terms of the Seagram offer and other natural resource company acquisitions.

I will discuss the specific provisions of the tender offer materials later as it becomes necessary.

Plaintiff commenced this lawsuit on April 15, 1981, seeking to enjoin the Fluor tender offer. After oral argument it appears plaintiff relies on two arguments:

First, plaintiff argued that in this two-step transaction the shareholders are entitled to receive at the tender offer stage essentially all of the information which would be contained in the prospectus which must be sent to shareholders before the proposed merger may be approved, in order to permit the shareholders to make an informed choice.

Plaintiff contends that this additional disclosure is required to make the prior disclosures not misleading, apparently relying on the alleged impression given by the tender offer that the value of 1.2 Fluor shares at the time of the merger will be $60.

It is unclear whether plaintiff complains of confusion with respect to the market value or the underlying value of 1.2 Fluor shares. (Of course, the pro forma financial statements which plaintiff seeks to have disclosed and available to her prior to the expiration of the cash tender offer would be relevant to book value, which is just one consideration which has an impact on a stock's market value.)

Second, plaintiff argues that even if we accept the views expressed by the SEC in Release No. 5927/14699 (April 24, 1978) (the existence of which plaintiff's counsel candidly conceded in the supplemental affidavit and in oral argument he was not aware of when the suit was commenced), in this case the conduct of Fluor and St. Joe by granting interviews to the press violated the restrictions placed by the SEC on this transaction in the release and in the no-action letter and constituted "jumping the gun," i. e., an attempt to precondition the market to a $60 value for the 1.2 Fluor shares to be exchanged as part of the merger.

Again, it is unclear whether the plaintiff refers to $60 as the market value or an underlying value for the Fluor stock.

Defendants contend, first, that plaintiff has failed to establish the requisite ele-

ments for a grant of preliminary injunctive relief.

Second, defendants argue that the SEC release and no-action letter authorized this transaction and that the restrictions stated by the SEC have not been violated and that Section 5 has not been violated.

Third, defendants argue that the disclosure which plaintiff seeks could not be accomplished in the five days permitted between announcement of and sending of materials with respect to a tender offer, with the result that offers such as that made by Fluor could not be made.

Defendants contend that had the Fluor offer not been made, the St. Joe shareholders would have had only one offer before them at a price of $45. Moreover, defendants contend that had Fluor merely announced the tender offer and proposed merger but had withheld any details of the offer until the merger prospectus was prepared, a suggestion advanced by plaintiff, the shareholders would have been forced to decide whether or not to accept Seagram's offer which was set to expire April 10, 1981, without any information about the Fluor offer and proposed merger, and Fluor and St. Joe would probably have been violating both the New York Stock Exchange and the SEC rules.

Finally, defendants argue that plaintiff lacks standing to challenge an alleged violation of Section 5 of the Securities Act of 1933 because she has not purchased shares issued in violation of the registration requirements imposed by Section 5.

*Discussion*

The question before me is a limited one: whether the Fluor tender offer should be enjoined. The standards for making that determination are clear:

"Preliminary injunctive relief in this Circuit calls for a showing of (a) irreparable harm, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief."

The quotation is from *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 2 Cir., 604 F.2d 755, 758, a decision of this Circuit in, I believe, 1980.

Plaintiff's application must be denied for failure to satisfy this test.

I have not definitively determined the merits of the plaintiff's claims. Rather, I have determined that plaintiff has failed to present "sufficient preliminary proof to warrant the issuance of a temporary injunction." *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 2 Cir., 638 F.2d 568, 569, a decision of the Second Circuit this year, in which the Court wrote with respect to the issuance of preliminary injunction in cases such as this that it is "an extraordinary and drastic remedy which should not be routinely granted."

That was a quotation by the Court from the decision in *Medical Society of New York v. Toia,* 560 F.2d 535, 538 (Second Circuit, 1977).

It is clear that some irreparable harm, that is, a harm for which there is no adequate remedy at law, must be shown before a preliminary injunction may be granted.

Plaintiff has made several allegations of harm. She alleges that shareholders will be unable to make informed investment decisions without disclosures of information that would be contained in a merger prospectus; that shareholders will lose the benefit, that is, "encouraging a competing and better bid," which would allegedly accrue if the tender offer is enjoined; that St. Joe may ultimately be found to have been a party to an illegal merger; and that the public interest in compliance with the federal securities laws will be harmed.

None of these alleged harms can fairly be characterized as irreparable since they are either highly speculative or remediable at law.

With respect to investment decisions, which is plaintiff's preliminary argument, plaintiff seeks essentially all of the information which would be contained in the merger prospectus on the theory that she must choose now between $60 cash, which will be taxable, and 1.2 shares of Fluor,

which would be received in a nontaxable transaction. In order to make this choice, plaintiff contends that she needs the merger prospectus.

The choice described by plaintiff, although arguably one choice, has three components:

First, plaintiff's choice at this point is not whether to accept 1.2 shares of Fluor stock. Rather, plaintiff must either tender her shares or hold them.

Second, if the plaintiff holds her shares and doesn't otherwise dispose of them, she will have an opportunity to review the merger prospectus and to vote for or against the merger.

Finally, if the merger is approved, she will have the option of accepting the 1.2 shares or exercising her appraisal rights under New York law, assuming she has complied with the procedures provided in New York Business Corporation Law, Section 623 (McKinney) *Id.* Section 910.

In attempting to resolve the conflict between the tender offer disclosure rules and Section 5, the SEC has chosen to view these steps as separate in the sense that the full prospectus, full merger prospectus disclosure is not required at the tender offer stage. See SEC Release referred to above.

Without resolving definitively the ultimate merits of this question, I do not find irreparable harm resulting from presentation to plaintiff of a choice to tender or hold her shares, based on the standard offer disclosure prescribed by the Act and the regulations. Moreover, if plaintiff is found after trial to have been harmed by being faced with this choice with inadequate disclosure, computation of damages would not be so speculative or complex as to preclude the fashioning of a remedy at law.

Plaintiff's other arguments with respect to irreparable harm are likewise without merit. The alleged benefit of encouraging a competitive bid which plaintiff contends will result from an injunction here is not a benefit protected by the securities law, and in fact such speculative arguments that another "white knight" may be waiting in the wings could be made in all tender offer litigation.

Moreover, plaintiff's position, if adopted, would most likely *decrease* the chances of competing bids by requiring a bidder who enters at a late date to make full merger disclosure in connection with a tender offer stage of a two-step transaction.

In any event, in this case the alleged injury which might result from denial of the application for a preliminary injunction in itself is not a basis for granting a preliminary injunction.

Moreover, it has not been shown what irreparable harm would result with respect to the cash tender offer from a future adjudication that St. Joe was a participant in an illegal merger. Of course, if the merger is in some way flawed, an SEC proceeding may be instituted or the merger may not actually go forward for some other reason.

Finally, the alleged harm to the public interest in compliance with the securities law does not supply a basis here for a preliminary injunction. The parties appear to have made a good-faith effort to comply with the securities law as interpreted by the SEC, which is aware of this transaction, and which the Court was yesterday advised is following it, or monitoring it, or investigating it, or somehow or other keeping an administrative agency's eye on what is occurring and, of course, the SEC has issued a general release which we find to permit a transaction in the form contemplated here as a general matter and a no-action letter specifically with respect to the Fluor transaction, including the tender offer which is to expire prior to the release of the merger prospectus.

In any event, as discussed herein, plaintiff has not demonstrated a likelihood of success on her claim that the security laws have been violated.

Plaintiff having failed to establish irreparable harm, her application must be denied. However, we note that plaintiff has also failed to satisfy the balance of the test for issuance of a preliminary injunction.

With respect to plaintiff's first claim that the disclosure equivalent to merger prospectus disclosure is required at the tender offer stage as a matter of law and to make prior statements not misleading, plaintiff is hard pressed to overcome the SEC's contrary position in Release Number 5927/14699 and in a no-action letter issued to Fluor on April 3, 1981, and to convince the Court that the statements made in the tender offer were misleading.

Plaintiff has cited no authority for a requirement of merger prospectus disclosure at the tender offer stage of a transaction of this sort or for the contention that what is described in the SEC release as a "Situation A" transaction, that is, a cash tender offer preceding a merger, cannot be legally accomplished where large corporations or complicated transactions are involved.

The SEC release is not limited to small corporations or simple transactions, and in the absence of any contrary authority we cannot find that plaintiff is likely to succeed on the merits. Additionally, I note my difficulty with plaintiff's contention that the statements that Fluor would pay $60 cash now, or if the merger is approved, exchange 1.2 shares of Fluor common were for each share of St. Joe common stock was misleading in that it "must" be concluded from this statement (and from the investment bankers' opinions that the proposed transaction is fair to St. Joe and its shareholders) that the value of the 1.2 shares of Fluor stock at the time of the proposed merger will be $60. This conclusion is far from necessary.

It is obvious that if the number of shares to be exchanged is fixed and the market price of the shares fluctuates, the value of those shares at a future date will be uncertain. The newspaper articles which discuss the offer and which are annexed as exhibits to the defendants' affidavit in opposition and plaintiff's supplemental affidavit in support of the application noted this unpredictability of the market value of the shares to be transferred if the proposed merger is approved, and I cannot conclude that the plaintiff is likely to succeed on this claim.

To the extent plaintiff's claim is that there is an implication that the underlying value of 1.2 Fluor shares, as opposed to the market price, at the time of the merger will be $60, we are also unconvinced of plaintiff's likelihood of success. As we have already noted, the pro forma financial statements which plaintiff seeks are relevant to book value, which is but one factor which influences market price.

The tender offer documents do not, on their face, state or imply that the underlying assets of the merged company would be worth $60 per 1.2 shares, and disclosure of such information does not appear to be required by the SEC or any other authority.

At the time of the shareholder vote on the proposed merger, plaintiff, if she still holds St. Joe shares, will be provided with appropriate information with regard to the underlying value of 1.2 Fluor shares, and will be entitled to vote for or against the proposed merger.

If the proposed merger is approved by the required number of shareholders, plaintiff, if she has preserved her right to do so, will have a final opportunity. If she views the underlying value of 1.2 Fluor shares as inadequate in exchange for her St. Joe shares, she may exercise, as I have already noted, her appraisal rights under New York law.

With respect to plaintiff's second claim that the granting of press interviews by Fluor and St. Joe violated the restrictions contained in the SEC release discussed above and constituted "jumping the gun" in violation of Section 5 of the Securities Act of 1933, I am unconvinced on this state of the record that plaintiff is likely to succeed.

Plaintiff relies on the following restriction in the release, especially the final section:

"The Division's position is, however, limited to the disclosure permitted by Rule 145(b) and to the disclosure required to be made by Section 14(d)(1) of the 1934 Act, Schedule 14D–1 promulgated thereunder and Section 14(e) of the 1934 Act. Depending upon the circumstances, statements

which are not required by the Williams Act may constitute an 'offer to sell' the securities to be exchanged in the subsequent merger and, in the absence of a registration statement filed with the Commission at the commencement of the tender offer, may constitute a violation of Section 5 of the 1933 Act. For example, a bidder should not issue press releases or grant interviews to the press which discuss a possible merger under circumstances where it appears that the decisions of security holders who will be voting on the merger may be unduly influenced without the benefit of the disclosures in a registration statement."

Although plaintiff contends that this restriction has been violated, we are not convinced that the mere fact that press releases were issued or interviews held will unduly influence shareholders' decisions without the benefit of a registration statement.

Plaintiff again relies on the "necessary conclusion" from the tender offer documents that the value of 1.2 Fluor shares at the time of the merger will be $60. This conclusion, which we do not find "necessary," was, as I have already said, dispelled by the very same articles which discussed the materials of the offer and the merger. The newspaper articles annexed to defendants' affidavit in opposition recognize and explain that while the value of the $60 cash offer was certain, the value of 1.2 Fluor shares at the time of the proposed merger would be uncertain, depending on the fluctuating market value of Fluor common stock. These are hardly circumstances where it can be said that shareholders were necessarily misled. Indeed, it cannot be said that they were likely to be misled.

Although plaintiff relies heavily on the interview which appeared in the April 27, 1981, edition of Business Week as evidence that the purpose of the cash tender offer was to precondition the market with respect to values relevant to the merger, the Court cannot infer the existence of such a purpose from the four corners of the article alone and, as noted earlier, plaintiff affirmatively disclaimed any desire to conduct discovery or to have an evidentiary hearing on this question.

Plaintiff also points out that the release and the no-action letter provide that it is permissible to make only the disclosures listed in Rule 145(b) and Section 14(d)(1) of the 1934 Act, Schedule 14D–1, and Section 14(e) of the 1934 Act, and that any disclosures which are not required by the Williams Act may constitute an "offer to sell" governed by Section 5 of the 1933 Act.

Plaintiff argues that the statement in the tender offer materials that the agreement between Fluor and St. Joe proposes a merger subsequent to the tender offer in which 1.2 Fluor shares would be exchanged for each St. Joe share is a disclosure not required by the Williams Act and therefore constitutes an offer to sell governed by Section 5.

We are unconvinced of plaintiff's likelihood of success on this claim in view of the provision in 17 CFR Section 230.145(b)(1) that a written communication of "a brief description of the transaction to be acted upon and the basis upon which such transaction will be made" will not be deemed an "offer to sell" under Section 5, and a similar provision in 17 CFR Section 230.135(a)(4) that a statement of the name of the shares to be exchanged and "the basis upon which the exchange may be made" will not be deemed an "offer to sell" under Section 5. See also *Chris-Craft Industries, Inc. v. Bangor Punta Corp.*, 426 F.2d 569, 574 (2d Cir. 1970).

For the reasons just stated, without reaching the question of plaintiff's standing to challenge a violation of Section 5, plaintiff has not shown a likelihood of success with respect to its claim that an unregistered offer of securities has been made.

Additionally, we note that *Chris-Craft v. Bangor Punta* on which plaintiff relied is distinguishable from this case for the same reasons which the SEC viewed as distinguishing the *Humana* case in its letter to Judge Lasker, dated January 6, 1978, at page 6– which has been attached as Exhibit E to defendants' memorandum in opposition:

"Hilton, in connection with its December 21, 1977, cash tender offer, was required by

Rule 14d–2 to file a statement on Schedule 14D–1 containing the information called for by Items 3(b) and 5(a) referred to above, which includes any negotiations with the subject company and any proposed merger; and the announcement which Humana objects to was made in response to these requirements. In the *Chris-Craft* case, Bangor Punta was not required to file under Section 14(d) or to make any announcement, except as this might be regarded as necessary in order to avoid the possible insider trading problem. The Commission in its amicus brief argued, and the majority of the Court of Appeals appeared to agree, that an announcement such as that which Bangor Punta made was probably not necessary under Rule 10b–5, and in any event need not have disclosed such matters as the estimated value of the securities proposed to be offered. By contrast, in the present case this information was at least arguably required in order to make full disclosure in response to the requirements of Schedule 14D.

"Moreover, the policies underlying the prohibition against 'gun jumping' contained in Section 5(c) of the Securities Act were clearly applicable to the Bangor Punta situation. This prohibition is designed to prevent an issuer from arousing investor interest before a registration statement covering the securities proposed to be offered has been filed; investors are intended to have an opportunity to evaluate the disclosures there contained. *See Securities and Exchange Commission v. Arvida*, 169 F.Supp. 211 (S.D.N.Y., 1958). This 'gun jumping' was precisely what Bangor Punta appeared to have intended. Chris-Craft had already made a cash tender offer and Bangor Punta's announcement appeared calculated to induce investors to refrain from accepting that offer, but rather to wait until the purportedly better offer of Bangor Punta became available following registration.

"In the present case, the circumstances are very different. Hilton has made a cash tender offer which it seeks to have investors accept immediately, and the disclosures complained of are simply designed to inform investors of steps which are contemplated by Hilton, not to induce investors to await subsequent developments. To apply the 'gun jumping' doctrine in this situation would not appear to further the policies underlying that doctrine, but would be inconsistent with the intention of Schedule 14D–1 to require, and implicitly to permit, disclosure of information available to the offeror regarding its ultimate intentions with respect to the target company."

Similarly, Fluor and St. Joe were required to report their agreement under the New York Stock Exchange Rules and in Schedule 14D–9, and there is no evidence that the purpose of the tender offer was other than to seek immediate acceptance by shareholders.

Nor can plaintiff contend, as was the case in *Chris-Craft*, that the challenged statement, that is, that the agreement between Fluor and St. Joe provides for a $60 tender offer to be followed by a proposed merger with the ratio of exchange as noted, cannot be verified by the SEC. *See Chris-Craft, supra*, 424 F.2d at 575; *McKloskey v. Epko Shoes, Inc.*, 391 F.Supp. 1279, 1284 (Eastern District of Pennsylvania, 1975).

Finally, plaintiff is unlikely to succeed in her claim that the risk that a cursory reading of the tender materials would give the misleading impression that $60 and 1.2 Fluor shares at the time of the proposed merger were economic equivalents because a careful reading of the material reveals that current market quotations are needed to determine the market value of 1.2 Fluor shares at any given time. *See McKloskey v. Epko Shoes, Inc., supra*, 391 F.Supp. at 1284.

*Fair Grounds For Litigation; Tipping of Hardships*

Plaintiff's claims cannot be categorized as frivolous, and they therefore present some grounds for litigation. However, in addition to her failure to demonstrate a threat of irreparable injury, plaintiff cannot establish a decided tipping of the hard ships in her favor.

As noted at oral argument, plaintiff's counsel suggested that the issuance of

checks be delayed, but this suggestion was immediately followed by the further suggestion that any sums which were not distributed pending ultimate resolution of this matter bear interest, and we do not find that plaintiff has satisfied that branch of the test.

Accordingly, the plaintiff's application for a preliminary injunction is denied.

Having delivered that opinion, I am reminded of the cliche of the apology for a long letter which is occasioned by the lack of opportunity to prepare a shorter letter, and I assure you gentlemen had I not been put to the time pressures inherent in this situation, the opinion would have been more concise.