Steven WALLERSTEIN and Max
Grill, Plaintiffs,

v.

PRIMERICA CORP., Gerald Tsai, Jr.,
Kenneth A. Yarnell, Jr., Harry S. Ho-
ward, Jr., William S. Woodside, Keith
D. Bunnel, Todd G. Cole, Dr. Harold B.
Ehrlich, Dr. Ronald Goldsberry, Ronald
D. Grimm, Richard R. Hough, Charles
E. Hugel, Donald Kramer, Sherry L.
Lansing, J. Bruce Llewellyn, Dr. Jerry
S. Rosenblum and Commercial Credit
Group, Inc., Defendants.

No. CV–88–3699.

United States District Court,
E.D. New York.

Dec. 15, 1988.

Joseph H. Weiss, Abbey & Ellis, New York City, Berger & Montague, P.C., Philadelphia, Pa., Wolf Popper Ross Wolf & Jones, Law Offices of Curtis Trinko, Lowey, Dannenberg & Knapp, P.C., New York City, for plaintiffs.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Primerica Corp.

Skadden Arps Slate Meagher & Flom, New York City, for defendant Commercial Credit Group.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiffs, shareholders of Primerica Corporation ("Primerica" or the "Company"), make this motion for an order preliminarily enjoining: (a) the Primerica shareholders' meeting with respect to the proposed merger between Primerica and Commercial Credit Group, Inc. ("Commercial Credit"), currently scheduled to be held on December 15, 1988; (b) any action with respect to the votes cast in the event the shareholders' meeting is held; (c) the consummation of the proposed merger between Primerica and Commercial Credit ("Merger"); (d) any payments or other distributions under the change in control, termination or other severance agreements; (e) the payment of the break-up fees in connection with the proposed Merger; (f) the continued violation of Section 14(a) of the Securities Exchange Act of 1934; and (g) the further dissemination of the false and misleading Proxy Statement.

A hearing was held on December 13, 1988 at which presentations were made on behalf of the respective parties. No testimony was adduced, but extensive depositions and affidavits were submitted in lieu thereof. After a consideration of the submissions and the presentations of counsel, the court makes the following findings of fact:

Following its acquisition of Smith Barney in June, 1987 for which it borrowed $750 million, Primerica sought to sell Fingerhut, one of its subsidiaries, intending to reduce with the cash that the sale of Fingerhut would produce, the debt which it assumed with the Smith Barney acquisition. It announced the desire to sell Fingerhut in August, 1987, but before that could be accomplished, the market crash of October, 1987 adversely affected the prospective sale of Fingerhut and also adversely affected the value of Smith Barney.

To ameliorate the negative impact upon Primerica occasioned by the effect of the crash of October 1987 upon those subsidiaries and to come to grips with cash flow deficits and other problems, alternative solutions were sought by Primerica and the Company became receptive to proposals from others which might offer financial solace.

In December 1987, Sanford Weill, the Chairman of Commercial Credit, expressed an interest in investing in Smith Barney. Preliminary discussions between Gerald Tsai, Chairman of Primerica and Mr. Weill were unproductive and they were discontinued in January, 1988. At about that time, Mr. Tsai also explored with a Japanese Trading Company the possibility of a minority investment in Primerica which also ultimately proved unproductive. Mr. Tsai shared the fact of those discussions with William S. Woodside, a member of the Company's Executive Committee and formerly Chairman of the Board and Chief Executive Officer of Primerica. He also informed the Board of Directors of the proposed offer and his rejection of it.

In April or May of 1988, Tsai, on behalf of Primerica, retained Lazard Freres & Co. ("Lazard") to study the Company and advise it as to possible alternatives for improving its economic condition and its prospects for future growth and development.

Even prior to its formal retainer, Lazard had assisted Primerica in its desire to sell Smith Barney and Fingerhut. Meetings in that connection were held between Lazard and representatives of Merrill Lynch, Xerox, an Australian company named Elders, and others.

In May, 1988, representatives of Lazard, (Rohatyn, Harris & Gold) suggested to Weill that Commercial Credit consider ac-

quiring all or part of Primerica. Weill was subsequently advised in June, 1988 that Tsai thought a per share merger price of $9.00 plus one share of Commercial Credit for all outstanding shares of Primerica's common stock would be appropriate.

Extended negotiations (characterized by Weill as being often bitter and at arms length), ensued over the next two months. Commercial Credit engaged Morgan Stanley & Company, Incorporated, The First Boston Corporation, and the law firm of Skadden Arps Slate Meagher & Flom, to assist its own house staff in due diligence investigations of Primerica's business and to determine the appropriate offer to make for Primerica's shares.

After additional information was gathered by and on behalf of Commercial Credit which gave rise to concerns regarding the financial health of some of Primerica's businesses Commercial Credit indicated a willingness to go forward if the cash payment were reduced to $4.00 or $5.00. Lazard rejected that proposal and negotiations were discontinued.

Some time thereafter, communication between the parties was resumed and after weeks of further negotiations, the agreement which gave rise to this action was reached between Weill and Tsai on August 25th, that is, one Commercial Credit share plus $7.00 for each share of Primerica stock.

Lazard believed the agreement was a fair one for Primerica's shareholders. On August 24, 1988 Primerica and Lazard agreed that Lazard would be paid one million dollars for its services and nine million dollars if the merger was approved by the shareholders—an agreement which is disclosed in the proxy statement at p. 7. On August 26, 1988 Mr. Tsai communicated telephonically with the directors of Primerica, sent them a packet of materials, and notified them to attend a meeting of the Board of Directors at 7:30 a.m. on August 29, 1988. Included in the materials sent to the directors were Commercial's 1987 annual report and Form 10–K, second quarter 1988 Form 10–Q, a proxy statement dated March 23, 1988, a background briefing book prepared by Lazard describing both companies, and a draft of the merger agreement. The minutes of the August 29th meeting reflect that presentations were made by Mr. Tsai and by Messrs. Rohatyn and Gold of Lazard. Those presentations are characterized in the minutes as detailed and in some respects, in depth. Mr. Tsai discussed management's recommendation of the merger and the reasons for it. He explained the broad consequences of the merger, described the business of Commercial Credit, the background of Mr. Weill, and the role he will play in the merged company. Mr. Tsai explained how the operation of the companies complement each other. He described the proposed merger in detail and his expected role in the new company.

Mr. Rohatyn who was then introduced by Mr. Tsai, described the role Lazard had played in the studies, analyses, and events leading up to the merger. He reviewed the options available for alleviating the Company's financial problems and indicated that the proposed merger was the most beneficial to the Company.

James Gold of Lazard expanded upon Mr. Rohatyn's presentation. He described Commercial Credit's business operations in depth and reviewed with the Board the additional materials prepared for them by Lazard and distributed at the meeting. He expressed the opinion that the merger was fair to Primerica's shareholders and distributed the written opinion of Lazard to that effect. The minutes then record that a general discussion of management's proposal ensued and lists the factors considered by the Board in arriving at its conclusion and its resolution to approve the merger and recommend approval by the stockholders, finding the merger to be fair to them and in their best interest.

A joint proxy statement/prospectus dated November 15, 1988 was subsequently issued as was a letter of the same date, inviting the stockholders to attend a special meeting on December 15, 1988 for the purpose of voting upon a proposal to adopt the Merger Agreement dated August 29, 1988. This motion is predicated upon 17 C.F.R.

§ 240.14a–9, promulgated by the Securities and Exchange Commission which provides in relevant part, as follows:

(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact necessary in order to make the statements therein not false or misleading ...

It is the plaintiffs' contention that the notice of meeting and the proxy statement contain false or misleading facts which will influence the shareholders and deprive them of their right to cast their votes based upon an informed judgment arrived at after a consideration of factually correct representations. Based upon that contention, they seek the extraordinary relief of a preliminary injunction previously alluded to.

■ Before addressing the specific portions of the proxy statement aimed at, a few general observations will be helpful. It would be an affectation of research to multiply citations for the principle that a claim that corporate directors have breached a fiduciary duty owed to the shareholders or to the corporation does not give rise to a claim under the federal securities laws. The citation of *Santa Fe Industries v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977) will suffice. Quoting from its prior holding in *Cort v. Ash*, 422 U.S. 66, 84, 95 S.Ct. 2080, 2091, 45 L.Ed.2d 26 (1975), the Court said: "Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law *expressly requires* certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." (emphasis in original). That observation, although made in the context of a Rule 10b–5 claim (17 C.F.R. § 240.10b–5) is surely equally applicable here.

A scrupulous adherence to that principle readily disposes of many of the arguments made by the plaintiffs. For example, the claim that the directors failed to exercise informed business judgment and the claim that the golden parachutes are abusive and constitute a breach of the individual defendants' fiduciary duties are plainly excluded from recognition by the federal securities laws and will not be further addressed beyond stating that those claims provide no basis for the relief the plaintiffs seek by this motion.

■ The next observation which will be helpful is that it is sufficient if relevant facts are fairly stated in a proxy statement, and the Regulations, 17 C.F.R. § 240a–1 et seq. require nothing more. *See, e.g., Rodman v. Grant Foundation*, 608 F.2d 64, 71 (2d Cir.1979); *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 803 (2d Cir. 1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). It is important to note that Reg. 14a–9 prohibits statements which, "*at the time and in the light of the circumstances under which it was made*, is false or misleading with respect to any *material fact*." A *material fact* is one that a reasonable shareholder would regard as important in deciding how to vote.

Finally, by way of general observation, it may be well to recall the comment of Justice Frankfurter in the Cardozo Lecture he delivered at the Association of the Bar of the City of New York in 1947 on *Some Reflections on the Reading of Statutes*. That lecture was reprinted in 47 *Colum.L. Rev.*, 527, 529 (1947). Justice Frankfurter said that: "On matters of statutory construction ... it makes a great deal of difference whether you start with an answer or with a problem." That insightful remark is equally applicable to the reading of proxy statements.

■ Turning to the plaintiffs' claims, they assert that the November 15, 1988 letter to shareholders that accompanied the proxy statement was false and misleading insofar as it states that "Your Board of Directors has *carefully* reviewed and considered the terms and conditions of the proposed merger...." It is the plaintiffs' claim that the Board of Directors did not

*carefully* consider the proposed merger at the August 29th meeting. That claim is predicated upon the assertion that that meeting was concluded in a matter of hours and it follows, therefore, that a matter of such importance could not have been *carefully* considered in so short a time. At oral argument, the plaintiffs asserted that their misrepresentation claim would survive were the word "carefully" omitted and the letter simply stated that the Board "reviewed and considered" the proposed merger. It should be noted that the word "carefully" does not appear in this context in the Joint Proxy Statement. (See pages vii and 5 of that Statement).

The infirmities of this assertion should be readily apparent. The conclusions so confidently advanced by the plaintiffs as to what the Directors knew and when they knew it can only be described, charitably, as rank speculation. A not too dissimilar claim was rejected in *Biesenbach v. Guenther*, 588 F.2d 400 (3rd Cir.1978) with this felicitous phrase, borrowed from Judge Frankel in *Stedman v. Storer*, 308 F.Supp. 881, 887 (S.D.N.Y.1969):

> The securities laws, while their central insistence is indeed upon disclosure, were never intended to attempt any such measures of psychoanalysis. . . .

The minutes of the meeting of the Board of Directors summarized briefly above, belie the speculative conclusions upon which this assertion is based and the fragmentary excerpts from the deposition of one or two directors hardly serve to support the claim. I have discussed this assertion pertaining to the "carefully reviewed" statement as if it were indeed a statement of material fact within the meaning of Reg. 14a–9. The plaintiffs' memorandum of law quite appropriately assigns a major portion of the discussion of this assertion to the duty of care and reasonable diligence directors are obliged to exercise. The plaintiffs, it would seem, implicitly recognize the claim to be, in essence, one which sounds in breach of fiduciary duty. That assertion, advanced as a 14a–9 claim, I find, is a thinly but unsuccessfully disguised breach of fiduciary duty claim.

The next claim the plaintiffs assert is that the fee agreement between Primerica and Lazard to pay Lazard nine million dollars when the merger is consummated gives rise to a conflict of interest in Lazard in soliciting the approval of the Merger Agreement. Emphasizing once again that this is a motion predicated upon 14a–9, there is no claim that that Regulation has been violated nor can there be. The proxy statement at page 7 explicitly recites the fee arrangement between Primerica and Lazard and nothing more is required. *Radol v. Thomas*, 534 F.Supp. 1302, 1315 (S.D.Ohio 1982).

Recognizing that required disclosure of the fee arrangement was made, the plaintiffs assert that the disclosure was placed in the wrong place in the proxy statement and in any event, should have been given greater prominence. The plaintiffs rely in part on *Kohn v. American Metal Climax, Inc.*, 322 F.Supp. 1331 (E.D.Pa.1970), *aff'd in relevant part*, 458 F.2d 255 (3rd Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972). My reading of the Circuit Court's opinion would drive me to conclude that this claim is unpersuasive. At 458 F.2d 267, the Court said:

> The fact, relied upon by the district court, that the RST Board recommendation appears in boldfaced type whereas only part of the disclosures of conflicting interests so appears does not in our view, violate the equal prominence rule. Nor is the rule violated because some of the interest disclosures were made only in the Appendices. *Reasonable latitude in this area is important if nit-picking is not to become the name of the game.* (emphasis added).

The plaintiffs have emphasized that Mr. Tsai hadn't notified the Board prior to August 24th of the proposed merger, or that he had retained Lazard. The affidavit of Mr. Woodside states that he was aware of Lazard's retainer and of Mr. Tsai's discussions with the Japanese Trading Company. More significant however is Mr. Woodside's view that the operation of Primerica is left to Mr. Tsai as Chief Executive Officer and that the search for solutions to deal

with the cash flow and other problems was for management to conduct. Pertinent as well is *Stedman v. Storer, supra,* in which, among other things, the plaintiffs complained that the independent directors of Northeast were never consulted in advance concerning a proposed merger with Northwest. The court said at 308 F.Supp. p. 886:

... the ... directors, will have occasion to consider the proposed merger when it comes on for the board's judgment.... There is no pertinent requirement for advance consultation ... and no basis for the view that the absence of such consultation was a fact which had to be "disclosed" or the nondisclosure of which made the things that were said misleading.

■ The next assertion aimed at the proxy statement is that it states that the Board considered, as a factor, that the merger will give Primerica's stockholders an immediate appreciation in value of their shares through the receipt of cash and stock which together will have a combined market value greater than the market price of their stock. The claim is that although factually correct and not misleading as of the time of the Merger Agreement, that statement was not entirely accurate when the proxy statement was issued.

I must once again revert to 14a–9 which explicitly prohibits statements of material fact which are false or misleading *"at the time and in the light of the circumstances under which it is made."* The proxy statement makes reference to that greater value *at the time of the Primerica Board meeting* (Proxy Statement at 5–6). The proxy statement also urged stockholders "to obtain current market quotations" for Commercial Credit Common Stock and Primerica Common Stock. (Proxy Statement at ix). Although much of the plaintiffs' written and oral argument was devoted to "premiums", a close reading of the proxy statement revealed the word "premium" just once (Proxy Statement at 6) and in a context which did not represent the realization or non-realization of such a "premium" by the shareholders as an inducement for the merger. The proxy statement did provide accurate information about the cash dividends paid historically by Commercial and Primerica and the historical stock prices of each in addition to their respective stock prices on August 26 and November 14, 1988.

The proxy statement contains no material facts that are either false or misleading in that regard. In language which seems to have acquired current acceptance, one need hardly be a "rocket scientist" to make the necessary simple mathematical calculations to reach an informed judgment and indeed, it is still true that corporations "are not required to address their stockholders as if they were children in kindergarten." *Richland v. Crandall,* 262 F.Supp. 538, 554 (S.D.N.Y.1967) (Mansfield, J.).

■ The plaintiffs claim that the proxy statement should have disclosed anticipated diminution of the earnings of the surviving company and its impact upon the value of Commercial Credit's shares. That assertion relies upon an affidavit of Gabriel F. Nagy which I find unpersuasive. Once again, the proxy statement contains a full disclosure of the pro-forma financial statements which reflect a dilution in the new company. Nothing more is required. "Full factual disclosure need not be embellished with speculative financial predictions." *Rodman v. Grant Foundation,* 608 F.2d 64, 72 (2d Cir.1979).

■ The plaintiffs next attack upon the proxy statement is on the ground that the Lazard financial fairness opinion was stale when the proxy statement was issued. Once again, no claim is made that any statement was false or misleading as to a material fact. The proxy statement plainly states that Lazard delivered to the Primerica Board of Directors its written opinion dated August 29, 1988. The opinion itself, dated August 29, 1988 is attached to the Proxy Statement as Annex IV. The plaintiffs recognize that there is no legal requirement that a Board of Directors obtain a fairness opinion on the value of the proposed merger and cite no authority for the proposition that the Board has an affirmative duty to obtain a more current opinion. The fairness opinion did not contain any

statement alleged by the plaintiffs to be false or misleading "at the time and in the light of the circumstances under which it [was] made." It is also plain that even if an updated opinion were obtained, Lazard would continue to recommend the transaction as financially fair and desirable. (Gold Dep. at 202–205).

The allegations of the plaintiffs concerning "Premiums Paid Only to Option Holders" make no claim of a false or misleading proxy statement. The treatment of the stock options were fully disclosed at page 13 of that statement and the ancillary claim that the disclosure was "buried" is specious.

In sum, an analysis of the plaintiffs' claimed 14a–9 proxy statement deficiencies leads me to conclude that they came to a reading of the Proxy Statement with answers rather than problems.

Primerica and Commercial Credit have each favored the court with an enlightening and trenchant discussion of the business judgment rule. In view of the disposition I make of this motion, a discussion of the applicability of that rule to the issue before me would be superfluous.

It is appropriate, if not necessary, that the law regulating preliminary injunctions in this Circuit be addressed, if only briefly. The standard for granting such relief has been stated in the frequently cited case of *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2nd Cir.1979) as follows:

> The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

The plaintiffs have an adequate remedy at law in the form of an action for damages should they be able, at some future time, to establish their claims. It cannot be gainsaid but that the loss they seek to avert and which they claim they will suffer is a monetary one. Should they be successful after a trial, the calculation of

damages would be neither so complex nor speculative as to make the formulation of a remedy at law impossible. *Sheinberg v. Fluor Corp.*, 514 F.Supp. 133, 137 (S.D.N.Y.1981).

In any event and notwithstanding whether or not the requirement of irreparable harm has been met, the plaintiffs have not succeeded in establishing either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in their favor.

The motion for a preliminary injunction is denied. The foregoing constitutes the findings of fact and conclusions of law required by Rule 52(a) of the Fed.R.Civ.P.

SO ORDERED.